THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MAXIMINO PIAZZA et al., Defendants and Appellants.

No. 9087. Argued May 18, 1942.—Decided June 16, 1942.

*Frank Torres, Héctor Ruiz Somohano, R. V. Pérez Marchand, R. Atiles Moréu* and *Raúl Matos,* for appellants. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

The defendants were convicted by a jury in the district court of murder in the second degree and sentenced to im-

prisonment for twenty years. They have appealed from that sentence.

Julio Mercado Díaz was privately employed as an investigator by the District Attorney at Ponce. He investigated cases for the government and testified in the trials thereof against the defendants. Some of these cases involved friends of Maximino Piazza, one of the defendants in this case. He also investigated cases against Maximino Piazza himself, including a charge of murder for which the latter was tried jointly with Ramón Ruiz. In that case Ruiz was convicted and Maximino Piazza was acquitted. However, subsequently Maximino Piazza visited the District Attorney and told him that he was guilty of that crime and that Ruiz was really innocent. The District Attorney then ordered Mercado to reinvestigate the case.

On September 19, 1940, at 6:30 in the evening, Mercado went to a restaurant in Ponce with some friends. The restaurant belonged to Ramón Ruiz. At that time an appeal by Ruiz in the murder case was pending in this court. Mercado and his friends had some drinks. While they were drinking, Maximino and Domingo Piazza, the two brothers who are the defendants in this case, arrived. About 8 o'clock Mercado's friends left. Mercado had had four drinks by that time.

When Mercado finally left the restaurant at 10 o'clock, he was completely intoxicated. He was unable to stand or to walk, and was literally carried out of the place by the Piazza brothers. The three of them proceeded towards a place in Ponce known as "El Vigía", where Mercado's body was subsequently found. During their journey, they encountered several people who were witnesses at the trial of this case. The latter testified that Mercado was "almost dead", and that the Piazza brothers handled him roughly, permitting him to fall, dragging him and occasionally carrying him. These witnesses asserted that the Piazza brothers seemed sober,

and stated that they were taking Mercado to their house because he was "tight".

The testimony was that during this trip Mercado had on a holster, but that there was no firearm within it. One witness helped the Piazzas carry Mercado to the place where his body was later found. He testified that as he was leaving, Domingo Piazza fired a shot at Mercado, who was lying on the ground, with the revolver which was identified at the trial as belonging to Mercado. He also testified that Maximino Piazza, after saying to Domingo, "Let's finish him up before he places the blame on us", took the revolver and fired two more shots at Mercado.

When Mercado's body was discovered the next day, two bullets were found near it which had been fired, according to the expert testimony, from his own revolver. His wallet, which was empty, was found near the body, and an order to show cause why their bond should not be forfeited, addressed to sureties of Maximino Piazza in a pending criminal case against the latter, was found in his pocket.

The Piazza brothers, who lived near the scene of the crime, were questioned, among others, by the district attorney when he reached the scene of the crime the next day. At first the Piazza brothers denied any connection with the killing. But when the district attorney began to question the witness who had been present during the shooting, Maximino Piazza interrupted and told the district attorney to investigate no more, that his brother Domingo was the man who had killed Mercado. Maximino then directed Domingo to proceed to his house and to bring to the district attorney the revolver with which he had killed Mercado. Domingo went into the house and brought back Mercado's revolver.

The defendant contended that Mercado and they had become intoxicated together and that they were taking Mercado to Maximino's house to sober him up; that Mercado suddenly became obstreperous and demanded to know where they were taking him; that Mercado kicked Domingo and hit him

on the chest with the butt of his revolver, which he was carrying between the belt of his trousers and his shirt; that in the struggle that ensued, Domingo wrested the firearm from Mercado; that when Mercado grabbed his wrist, Domingo fired a shot in defense of his life, continuing to fire after Mercado fell to the ground; that Maximino Piazza not only did not participate in the fight, but that he had tried unsuccessfully to prevent Domingo from shooting Mercado.

■■ The defendants contend that the district court erred in permitting testimony that the deceased had been investigating other alleged crimes of Maximino Piazza. The rule that other acts of misconduct of the defendant can not be introduced in evidence in a criminal case is subject to some exceptions. Underhill's Criminal Evidence, Fourth Edition, §184, p. 337, points out that ". . . it may be shown that the victim of a homicide, for which the defendant is on trial, was a police officer, or other person who, when he was killed, was engaged in investigating the circumstances of another prior and independent crime of which the accused was suspected." Wharton's Criminal Evidence, Eleventh Edition, vol. I, §345, p. 490, puts the rule as follows: "In certain classes of cases collateral offenses may be shown to prove the mental processes or mental attitude of the accused. This includes five different things: (1) Motives—such as commission of the crime charged to suppress evidence of some other crime; . . .". We have recently exhaustively examined this subject in *People* v. *González*, 57 P.R.R. 729.

The evidence that Mercado was investigating the alleged crimes of Maximino Piazza for the district attorney was highly relevant in showing the motive for the commission of the crime charged herein against the Piazza brothers. There was no error in permitting this testimony. The court *motu proprio* carefully restricted this testimony by instructing the jury at the time it was adduced to consider it as to the alleged motive, and for no other purpose.

What we have said likewise disposes of the error assigned in admitting as an exhibit the order to the bondsmen of Maximino Piazza to show cause why their bond should not be forfeited in a pending criminal case against Maximino Piazza. Indeed, the fact that this order was found on the body of the deceased was in itself highly significant.

The testimony of the district attorney as to the murder case in which Maximino Piazza had been acquitted and Ramón Ruiz had been convicted was also admissible as tending to show the motive in this case. The district attorney had previously testified without contradiction that after the trial of that case, Maximino Piazza had come to see him and had told him that he was guilty rather than Ruiz. It was clearly the duty of the district attorney to reinvestigate the case to avoid a possible miscarriage of justice. The fact that the deceased was entrusted with this investigation by the district attorney was certainly relevant as to the motive of the Piazza brothers in the case at bar.

The indictment charges that, "acting with a common agreement and in concert," the two defendants killed Mercado. The indictment then goes on to allege that Maximino Piazza struck the deceased on different parts of his body with an iron bar, and that the defendant Domingo Piazza shot the deceased with a revolver several times in the head.

Maximino Piazza assigns error on the ground that a fatal variance exists as to him. He contends that there was no testimony from which the jury could find that he had participated in the killing of the deceased by striking him with an iron bar. He regards this alleged failure of the proof to conform to the indictment as justifying his acquittal. See *Berber* v. *United States*, 295 U.S. 78, 82; *People* v. *Mediavilla*, 54 P.R.R. 554, 556.

There was testimony, however, that Maximino as well as Domingo Piazza shot the deceased. As we have seen, there was also other testimony showing a continued course of conduct by both defendants which culminated in the shooting

of Mercado. The jury might well have found from the entire record that the two defendants, "acting with a common agreement and in concert," killed Mercado. In that event, the allegation as to the use of the iron bar was surplusage and may be treated as such. It would then be immaterial which defendant actually wielded the weapon which caused the death of Mercado. Section 36, Penal Code, 1937 ed; *People* v. *Vélez et al.,* 32 P.R.R. 355.

In addition, there was medical testimony that some of the injuries inflicted on the deceased could have been caused by an iron bar. And in a search of Maximino's house shortly after the crime such an iron bar belonging to Maximino was discovered and was introduced in evidence at the trial. The jury was therefore justified in finding under this testimony that Maximino participated in the killing in the manner alleged in the indictment.

██ There was no error in the manner in which the district court handled the sworn declarations of the defendants which had been taken by the district attorney the day after the killing. The defendants complain that the district attorney was not required at the trial to establish as a preliminary matter the voluntary nature of these statements. But these declarations were never offered in evidence. They were merely identified by the secretary of the district attorney, and the court made it abundantly clear that they were not in evidence. Indeed, the record shows that they never became exhibits which were considered by the jury.

Moreover, the statements followed the theory which the defendants advanced at the trial, and substantially reiterated the position which Domingo Piazza took in his testimony; namely, that Domingo had shot the deceased in self-defense and that Maximino did not participate in any manner in the killing. The voluntary character of such a statement, not amounting to a confession, does not have to be proved prior to its admission. *People* v. *Dones,* 56 P.R.R. 201, 209.

568

■ We likewise find no error in the manner in which the district attorney utilized the sworn declaration of Domingo Piazza in cross-examining him. He had testified that the deceased had kicked him and had struck him with the butt of his revolver on the chest before he had fired at Mercado. The district attorney was entitled to impeach his credibility by showing on cross-examination that he failed to make these statements when he made his sworn declaration before the district attorney.` Indeed, there was no objection by the defense while the district attorney was engaged in this cross-examination.

■ The defendants complain of the refusal of the district court to permit the Chief of Police of Ponce to testify that the deceased had never registered a firearm. Even assuming that the defense had properly put in issue the bad reputation of the deceased and had contended that such reputation was known to the defendants, this could not be proved by alleged specific acts of misconduct or violations of law. Underhill's Criminal Evidence, Fourth Edition, §562, pages 1111-16; *People* v. *Ramírez,* 37 P.R.R. 84, 92. The court committed no error in excluding such testimony.

■ The defendants also assign as errors the refusal of the district court on two occasions to grant motions for mistrial based on the remarks of the district attorney in his closing argument to the jury. On one occasion the district attorney was arguing that the wallet belonging to the deceased had contained some money when he left the restaurant, but that it had been found empty at the scene of the crime. The defense protested that there was no evidence that the wallet had contained any money prior to the killing. However, there was testimony that Mercado had paid the liquor bill before leaving the restaurant, and it is not a wholly unreasonable inference that he had some money left when he and the defendants departed. In any event, the court cured any possible error by instructing the jury that there was no such

evidence, and that the jury was to ignore the comment on this question of the district attorney and to wipe it from their minds.

The second motion came when the district attorney argued that the defendants had deliberately intoxicated the deceased. We feel that there was sufficient evidence from which this inference could be drawn. Here again the court was unusually liberal in curing any possible error by instructing the jury that there was no such evidence in the record and to ignore the comments of the district attorney.

When the verdict was originally read aloud by the clerk of the court, it read as follows: "We, the gentlemen of the jury, find the defendants Maximino Piazza and Domingo Piazza . . . of the crime of murder in the second degree.". Since the jury had failed to insert in its written verdict either the word "guilty" or the words "not guilty", the court ordered the jury to return to the jury room to correct its verdict. Within a short time, the jury returned to the court and rendered its verdict, which had been completed by the insertion of the word "guilty" in the blank space.

The court asked the jury if this was the verdict of each of them, and counsel for the defendants made a poll of the jury. The court then asked if the verdict rendered had been the verdict of the jury both before and after it had been corrected. These questions were all answered in the affirmative. In response to questions by counsel for the defendants, one of the jurors explained that there had simply been an omission in the insertion of the word "guilty" in writing the verdict, which was noticed for the first time when the clerk read the verdict aloud in open court.

The court properly overruled a motion for mistrial on the ground that the verdict rendered was a nullity. The explanation that the word "guilty" had been inadvertently omitted was a plausible one. If the jury had intended to

bring in a verdict of not guilty, it would clearly have not inserted in its verdict the words "in the second degree". The jury in this case had not yet been discharged when the error was discovered. The court acted properly in ordering the jury, which was still under the control of the court, to resume its deliberations and to correct its verdict. The authorities clearly support this view. Section 288, Code of Criminal Procedure, 1935 ed.; *People* v. *Dones*, 56 P.R.R. 201, 212, 213; *People* v. *López*, 39 P.R.R. 691, 693; *People* v. *Jenkins*, 56 Calif. 4; *Marable* v. *State*, 157 So. 861 (Ala.).

The remaining errors assigned deserve no serious consideration. The defendants contend that the jury erred in refusing to believe their theory of self-defense. The record abounds with testimony warranting a verdict of murder in the first degree. The jury chose to believe the witnesses for The People, and was perhaps unduly lenient in rendering a verdict of murder in the second degree.

The general error assigned that the instructions were erroneous, incomplete and misleading is wholly without basis. The defendants do not complain of any specific instruction. Indeed, at the trial they took only a general exception to the charge as a whole. We have repeatedly held that such an exception does not save any alleged error on appeal. We have nevertheless examined the entire charge, and have concluded that the court instructed the jury fully, correctly, and impartially.

The defendants complain that the district court abused its discretion in sentencing the defendants to twenty years in the penitentiary. Under all the circumstances we think the lower court was fully justified in imposing this sentence.

The judgment of the district court will be affirmed.