THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL OJEDA LÓPEZ, Defendant and Appellant.

No. 11382. Argued June 4, 1946.—Decided July 15, 1946.

*Santos P. Amadeo* and *Gilberto Concepción de Gracia*, for appellant.
*E. Campos del Toro, Attorney General, Luis Negrón Fernández, First Assistant Attorney General*, and *J. Correa Suárez, Assistant Prosecuting Attorney*, for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

Miguel Ojeda López was accused in the District Court of Bayamón of the crime of murder in the first degree, convicted by a jury of the crime charged, and sentenced by the court to life imprisonment. He urges in this appeal that the lower court erred in disregarding the objection that defendant's counsel made to certain statements uttered by the district attorney in the presence of the jury in an attempt to impeach, without any reason therefor, defendant's witness, Lucas Ocasio, calling him a professional witness; and he also contends that the verdict of the jury is contrary to the law and the evidence.

The incident on which the first assignment is based took place while defendant's witness, Lucas Ocasio, was testifying upon being cross-examined by the district attorney, as follows:

"Q. And who wounded Cristino Nieves?

"A. Well, there was a struggle between both of them.

"Q. Tell me, do you frequently come here as a witness?

"Defenser Counsel: I object, Your Honor. It is not an offense to be a witness before the court.

"District Attorney: The district attorney is trying to prove that this man knows nothing of the facts, that he is a professional witness.

"Q. I have seen him here several times.

"A. I have not testified here. I am 68 years old and I have not testified here.

"Q. You were saying that they had a struggle?

"A. It lasted about five or six minutes."

There is no doubt whatsoever that the words of the district attorney, in the absence of evidence presented by him in sup-

port of his assertion, were highly improper. Also, the court should have decided the objection made by the defendant, but it failed to do so. However, defendant's counsel did not insist, or request any special instruction to the jury, on this question.

Appellant contends that the district attorney's statements were prejudicial to him because they referred to the only witness for the defendant. In support thereof he cites *People* v. *Marchand,* 53 P.R.R. 640. That case may be easily distinguished from the one at bar. There the district attorney, while addressing the jury, referred to facts which had not been proved and which tended to harm the defendant. In the present case, we are of the opinion that in view of the evidence for the prosecution, which is clear and strong, consisting of the testimony of eyewitnesses and also of defendant's own confession together with his testimony at the trial, although the district attorney's statements were improper, the error committed by the court in failing to decide the objection made does not require the reversal of the judgment.

In *People* v. *Scott,* 141 Pac. 945, 948, the district attorney asked a certain question of a witness concerning the character of the defendant. The defendant objected and the court upheld the district attorney. On appeal the Supreme Court of California stated: "It may be that the district attorney should have refrained from asking said question of witness Morán; but, if we were to so hold, it would, in our opinion, be a gross miscarriage of justice to set aside the verdict for the mere asking of said question. The evidence of defendant's guilt is so strong and persuasive that it is incredible that the verdict would have been otherwise if the declared misconduct of the district attorney had not occurred. . . ."

The generally accepted doctrine is to the effect that improper isolated statements uttered by the district attorney shall not require the reversal of the case, where the prosecution rests on such strong and convincing evidence, that even in the absence of said statements the verdict would have been

the same.  *Johnson* v. *United States,* 215 F. 679; *Fitter* v. *United States,* 258 F. 567, and *Berger* v. *United States,* 295 U. S. 78, 89.  In the latter case, wherein the judgment was reversed because of persistent improper statements uttered by the district attorney in the presence of the jury, the Court said (page 89) : "If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might be reached.  (Citing authorities.)  Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential. . . . "

As we have said, the evidence for the prosecution in the case at bar was strong and direct.  Eyewitnesses testified that while Cristino Nieves was in a café which belonged to Emilio Brañuelas, purchasing some cigarettes, the defendant entered the place and stabbed Nieves in the back; that the latter began to run around the place looking for an exit and upon facing the defendant the latter stabbed him again in the chest, that the dagger which the defendant carried was seven or eight inches long; that no words were uttered between the defendant and Nieves, and no quarrel whatsoever took place. The district attorney also presented a sworn statement given by defendant before him on the same day of the occurrence wherein, although defendant stated that while he was standing at the entrance of the café Nieves had made "a feint with the hands" and he had struck him with the dagger, he admitted that Nieves at no time took out any weapon and that he, the defendant, had been carrying the dagger for three days "in order to avenge his sister's death." [1]

---

[1] On the witness stand, defendant testified that Cristino Nieves and his two brothers had killed defendant's sister three days before, and repeated that he was carrying the dagger because he was being followed and that he killed Nieves to avenge his sister's death

Defendant's witness, Lucas Ocasio, testified that he saw when the defendant and Nieves had a fight and were struggling inside the café but that shortly thereafter both left for their homes, and Nieves stated that he was wounded. That he does not know who wounded Nieves and that the latter held nothing in his hands.

The evidence for the prosecution, in our judgment, tended to show that the defendant wounded Nieves in the back and then wounded him again in the chest, when Nieves was trying to flee, without any struggle or quarrel having taken place. This evidence, together with that of the defendant, tended to show that appellant killed Nieves induced by an impulse to avenge his sister's death. All this evidence which was believed by the jury is sufficient to support the verdict of the jury which, in our opinion, would have been the same, even in the absence of the improper question asked by the district attorney. The first error assigned was not committed.

█ Under the second assignment, the appellant argues that the verdict is contrary to law due to the fact that subdivision 5 of § 9 of the Spanish Penal Code of 1870 [2] is in force in Puerto Rico pursuant to § 560 of the Penal Code of Puerto Rico,[3] according to our decision in *Torres* v. *Heirs of Córdova,* 31 P.R.R. 849, and that, consequently, the jury should have brought a verdict of murder in the second degree or of voluntary manslaughter. He is wrong.

In the first place, what we held in *Torres* v. *Heirs of Córdova, supra,* was that, according to § 560, *supra,* "Specifically, only so much of the old Penal Code was repealed *as related*

---

[2] Subdivision 5 of § 9 of the Spanish Penal Code of 1870 reads thus:

"The attenuating circumstances are:

"5°.—When the crime is committed in revenge of a grave offense committed against the author, his ascendants, discendants, spouse, brothers or sisters or any relative within the same degrees."

[3] Section 560 provides:

"The Penal Code, Royal Decrees, Orders and Military Orders in force in Puerto Rico, in so far as htey are related to or refer to crimes and are inconsistent or in conflict herewith, and all other laws, orders, decrees and acts inconsistent or in conflict with this Code, are hereby repealed."

*to crimes and not to the civil liability springing therefrom.''*
(Italics ours.) It was further held that § 123 of the Penal
Code of Cuba and Puerto Rico [4] has not been expressly re-
pealed by § 560, *supra,* and consequently that an action for
damages for seduction survives the seducer and may be
brought against his heirs or at least against those who accept
the inheritance. It is advisable to add that in *Reyes* v.
*Aponte,* 60 P.R.R. 867, we rejected the *obiter dictum* appear-
ig in *Torres* v. *Heirs of Córdova, supra,* to the effect that
''to determine the nature of a civil liability arising from a
penal act, the present Penal Code must be considered as well
as the origin of the civil liability in the Spanish Penal Code,''
and we held that since 1904 civil obligations arising from
crimes are governed, not by the provisions of the Spanish
Penal Code, but by those of §§ 1059 and 2 of the Civil Code
and the Code of Civil Procedure, respectively.

In the second place, it cannot be maintained that the jury
in the case at bar, even if it had been expressly charged on
the question raised here by appellant (which was not done),
could have applied subdivision 5 of § 9, *supra,* relating to
attenuating circumstances, and rendered a verdict of murder
in the second degree, inasmuch as this degree of the crime
does not exist under the Spanish Code. Therefore, in *People*
v. *Reyes,* 12 P.R.R. 60, wherein the appellant was charged
in 1899 with the crime of murder committed on November 5,
1898, his trial being held on July 20, 1906, where he was con-
victed, it was held that:

"Article 414 of the former Penal Code in defining the crime of
assassination, does not admit the classification of murder in the first
and second degrees established by section 201 of the Penal Code in
force, and, therefore, if Reyes was to be punished under the former
Code, the jury which found him guilty could not be required to com-

---

[4] This Section provided:

"The obligation to make restitution, to repair the damages or indemnify
the losses, is transmitted to the heirs of the person liable.

"The action to demand restitution, reparation or indemnification is also
transmitted to the heirs of the person injured."

ply with the provisions of section 284 of the Code of Criminal Procedure in force, because it was not necessary to make any distinction between different degrees of guilt in fixing the crime, and therefore, there was no need of determining the degree of the crime committed."

For the reasons stated, the judgment appealed from should be affirmed. with the costs of the trial and of the appeal against the appellant.