BERGER *v.* UNITED STATES.

No. 544.   Argued March 7, 1935.—Decided April 15, 1935.

*Mr. Nathan D. Perlman,* with whom *Mr. Sydney Rosenthal* was on the brief, submitted for petitioner.

*Mr. Justin Miller,* with whom *Solicitor General Biggs* and *Messrs. H. Brian Holland, W. Marvin Smith,* and *Harry S. Ridgely* were on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Petitioner was indicted in a federal district court charged with having conspired with seven other persons named in the indictment to utter counterfeit notes pur-

porting to be issued by designated federal reserve banks, with knowledge that they had been counterfeited. The indictment contained eight additional counts alleging substantive offenses. Among the persons named in the indictment were Katz, Rice and Jones. Rice and Jones were convicted by the jury upon two of the substantive counts and the conspiracy count. Petitioner was convicted upon the conspiracy count only. Katz pleaded guilty to the conspiracy count, and testified for the government upon an arrangement that a *nolle prosequi* as to the substantive counts would be entered. It is not necessary now to refer to the evidence further than to say that it tended to establish not a single conspiracy as charged but two conspiracies—one between Rice and Katz and another between Berger, Jones and Katz. The only connecting link between the two was that Katz was in both conspiracies and the same counterfeit money had to do with both. There was no evidence that Berger was a party to the conspiracy between Rice and Katz. During the trial, the United States attorney who prosecuted the case for the government was guilty of misconduct, both in connection with his cross-examination of witnesses and in his argument to the jury, the particulars of which we consider at a later point in this opinion. At the conclusion of the evidence, Berger moved to dismiss the indictment as to the conspiracy count, on the ground that the evidence was insufficient to support the charge. That motion was denied. Petitioner, Rice, Katz and Jones were sentenced to terms of imprisonment.

The court of appeals, affirming the judgment, 73 F. (2d) 278, held that there was a variance between the allegations of the conspiracy count and the proof, but that it was not prejudicial; and that the conduct of the prosecuting attorney, although to be condemned, was not sufficiently grave to affect the fairness of the trial. We brought the case here on certiorari because of a conflict

with other circuit courts of appeals in respect of the effect of the alleged variance.

1. It is settled by the great weight of authority that although an indictment charges a conspiracy involving several persons and the proof establishes the conspiracy against some of them only, the variance is not material. But several circuit courts of appeals have held that if the indictment charges a single conspiracy, and the effect of the proof is to split the conspiracy into two, the variance is fatal. Thus it is said in *Telman* v. *United States,* 67 F. (2d) 716, 718: " Where one large conspiracy is charged, proof of different and disconnected smaller ones will not sustain a conviction." In support of that statement the various decisions upon which petitioner here relies are cited. This view, however, ignores the question of materiality, and should be so qualified as to make the result of the variance depend upon whether it has sub-stantially injured the defendant.

In the present case, the objection is not that the allega-tions of the indictment do not describe the conspiracy of which petitioner was convicted, but, in effect, it is that the proof includes more. If the proof had been confined to that conspiracy, the variance, as we have seen, would not have been fatal. Does it become so because, in addi-tion to proof of the conspiracy with which petitioner was connected, proof of a conspiracy with which he was not connected was also furnished and made the basis of a verdict against others?

Section 269 of the Judicial Code, as amended (28 U. S. C. § 391) provides:

" On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the sub-stantial rights of the parties."

The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. *Bennett* v. *United States,* 227 U. S. 333, 338; *Harrison* v. *United States,* 200 Fed. 662, 673; *United States* v. *Wills,* 36 F. (2d) 855, 856–857. Cf. *Hagner* v. *United States,* 285 U. S. 427, 431–433.

Evidently Congress intended by the amendment to § 269 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless. See *Haywood* v. *United States,* 268 Fed. 795, 798; *Rich* v. *United States,* 271 Fed. 566, 569–570.

The count in question here charges a conspiracy to utter false notes of one federal reserve bank each calling for $20, and those of another each calling for $100. The object of the utterance thus concerted is not stated; but the proof as to the conspiracies is that the one between Katz and Rice was with the purpose of uttering the false notes to buy rings from persons advertising them for sale, and the object of the other between Katz, Jones and Berger was to pass the notes to tradesmen. Suppose the indictment had charged these two conspiracies in separate counts in identical terms, except that, in addition, it had specifically set forth the contemplated object

of passing the notes, naming Berger, Katz, Rice and Jones as the conspirators in each count. Suppose further that the proof had established both counts, connecting Berger with one but failing to connect him with the other, and thereupon he had been convicted of the former and acquitted of the latter. Plainly enough, his substantial rights would not have been affected. The situation supposed and that under consideration differ greatly in form; but do they differ in real substance? The proof here in respect of the conspiracy with which Berger was not connected may, as to him, be regarded as incompetent; but we are unable to find anything in the facts—which are fairly stated by the court below—or in the record from which it reasonably can be said that the proof operated to prejudice his case, or that it came as a surprise; and certainly the fact that the proof disclosed two conspiracies instead of one, each within the words of the indictment, cannot prejudice his defense of former acquittal of the one or former conviction of the other, if he should again be prosecuted.

In *Washington & Georgetown R. Co.* v. *Hickey*, 166 U. S. 521, 531, this court said that "no variance ought ever to be regarded as material where the allegation and proof substantially correspond, or where the variance was not of a character which could have misled the defendant at the trial." This was said in a civil case, it is true, but it applies equally to a criminal case if there be added the further requisite that the variance be not such as to deprive the accused of his right to be protected against another prosecution for the same offense. See *Meyers* v. *United States*, 3 F. (2d) 379, 380; *Mansolilli* v. *United States*, 2 F. (2d) 42, 43.

We do not mean to say that a variance such as that here dealt with might not be material in a different case. We simply hold, following the view of the court below,

that applying § 269 of the Judicial Code, as amended, to the circumstances of this case the variance was not prejudicial and hence not fatal.

2. That the United States prosecuting attorney overstepped the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense is clearly shown by the record. He was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and in general, of conducting himself in a thoroughly indecorous and improper manner. We reproduce in the margin* a few excerpts

---

*[The defendant (petitioner) was on the stand; cross-examination by the United States attorney]:

" Q. The man who didn't have his pants on and was running around the apartment, he wasn't there?

"A. No, Mr. Singer. Mr. Godby told me about this, he told me, as long as you ask me about it, if you want it, I will tell you, he told me ' If you give this man's name out, I will give you the works.'

" Q. Give me the works?

"A. No, Mr. Godby told me that.

" Q. You are going to give me the works?

"A. Mr. Singer, you are a gentleman, I have got nothing against you. You are doing your duty.

" Mr. Wegman: You are not going to give Mr. Singer the works. Apparently Mr. Singer misunderstood you. Who made that statement?

" The Witness: Mr. Godby says that.

" Q. Wait a minute. Are you going to give me the works?

"A. Mr. Singer, you are absolutely a gentleman, in my opinion, you are doing your duty here.

from the record illustrating some of the various points of the foregoing summary. It is impossible, however, without reading the testimony at some length, and thereby obtaining a knowledge of the setting in which the objectionable matter occurred, to appreciate fully the extent of the misconduct. The trial judge, it is true, sustained objections to some of the questions, insinuations and misstatements, and instructed the jury to disregard them. But the situation was one which called for stern rebuke and repressive measures and, perhaps, if these were not successful, for the granting of a mistrial. It is impossible to say that the evil influence upon the jury of these acts of misconduct was removed by such mild judicial action as was taken.

The prosecuting attorney's argument to the jury was undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury. A reading of the entire argument is necessary to an appreciation of these objectionable features. The following is an illustration: A witness by the name of Goldie Goldstein

---

" Q. Thank you very much. But I am only asking you are you going to give me the works?

"A. I do not give anybody such things, I never said it.

" Q. All right. Then do not make the statement.

" Mr. Wegman: The witness said that Mr. Godby said that.

" The Court: The jury heard what was said. It is not for you or me to interpret the testimony.

" Q. I asked you whether the man who was running around this apartment . . . , was he there in the Secret Service office on the morning that you were arrested?

"A. I didn't see him.

" Q. I wasn't in that apartment, was I?

"A. No, Mr. Singer.

" Q. I didn't pull the gun on you and stick you up against the wall?

"A. No.

" Q. I wasn't up in this apartment at any time, as far as you know, was I?

"A. As far as I know, you weren't.

**86**

had been called by the prosecution to identify the petitioner. She apparently had difficulty in doing so. The prosecuting attorney, in the course of his argument, said (italics added):

"Mrs. Goldie Goldstein takes the stand. She says she knows Jones, *and you can bet your bottom dollar she knew Berger.* She stood right where I am now and looked at him and was afraid to go over there, and when I waved my arm everybody started to holler, 'Don't point at him.'

"Q. You might have an idea that I may have been there?
"A. No, I should say not.
"Q. I just want to get that part of it straight.

. . . . .

"Q. Was I in that apartment that night?
"A. No, but Mr. Godby——
"Q. Was Mr. Godby in that apartment?
"A. No, but he has been there.

. . . . .

"Q. Do you include as those who may have been there the Court and all the jurymen and your own counsel?
"A. Mr. Singer, you ask me a question. May I answer it?
"Mr. Wegman: I object to the question.
"The Witness: Are you serious about that?
"The Court: I am not going to stop him because the question includes the Court. I will let him answer it.
"Mr. Singer: I would like to have an answer to it.
"The Witness: Mr. Singer, you asked me the question before——
"The Court: You answer this question.
(Question repeated by the reporter.)
"A. I should say not; that is ridiculous.

. . . . .

"Q. Now Mr. Berger, do you remember yesterday when the court recessed for a few minutes and you saw me out in the hall; do you remember that?
"A. I do, Mr. Singer.
"Q. You talked to me out in the hall?
"A. I talked to you?
"Q. Yes.
"A. No.

You know the rules of law. Well, it is the most complicated game in the world. I was examining *a woman that I knew knew Berger and could identify him,* she was standing right here looking at him, and I couldn't say, ' Isn't that the man? ' Now, imagine that! But that is the rules of the game, and I have to play within those rules.''

" Q. You say you didn't say to me out in the hall yesterday, ' You wait until I take the stand and I will take care of you '? You didn't say that yesterday?

"A. No; I didn't, Mr. Singer; you are lying.

" Q. I am lying, you are right. You didn't say that at all? ·

"A. No.

" Q. You didn't speak to me out in the hall?

"A. I never did speak to you outside since this case started, except the day I was in your office, when you questioned me.

" Q. I said yesterday.

"A. No, Mr. Singer.

" Q. Do you mean that seriously?

"A. I said no.

" Q. That never happened?

"A. No, Mr. Singer, it did not.

" Q. You did not say that to me?

"A. I did not.

" Q. Of course, I have just made that up?

"A. What do you want me to answer you?

" Q. I want you to tell me I am lying, is that so? . . .

[No effort was later made to prove that any such statement had ever been made.]

.        .        .        .        .

" Q. Did she say she was going to meet me for anything except business purposes?

"A. No.

" Q. If she was to meet me?

"A. Just told me that you gave her your home telephone number and told her to call you up after nine o'clock in the evening if she found out anything about the case that you could help me with, that is what she told me.

"Q. Even if that is so, what is wrong about that, that you have been squawking about all morning.''

The jury was thus invited to conclude that the witness Goldstein knew Berger well but pretended otherwise; and that this was within the personal knowledge of the prosecuting attorney.

Again, at another point in his argument, after suggesting that defendants' counsel had the advantage of being able to charge the district attorney with being unfair " of trying to twist a witness," he said:

" But, oh, they can twist the questions, . . . *they can sit up in their offices and devise ways to pass counterfeit money;* ' but don't let the Government touch me, that is unfair; please leave my client alone.' "

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. The court below said that the case against Berger was not strong; and from a careful examination of the record we agree. Indeed, the case against Berger, who was convicted only of conspiracy and not of any substantive offense as were

the other defendants, we think may properly be characterized as weak—depending, as it did, upon the testimony of Katz, an accomplice with a long criminal record.

In these circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its non-existence. If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt " overwhelming," a different conclusion might be reached. Compare *Fitter* v. *United States*, 258 Fed. 567, 573; *Johnson* v. *United States*, 215 Fed. 679, 685; *People* v. *Malkin*, 250 N. Y. 185, 201–202; 164 N. E. 900; *Iowa* v. *Roscum*, 119 Iowa 330, 333; 93 N. W. 295. Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential. A new trial must be awarded. Compare *N. Y. Central R. Co.* v. *Johnson*, 279 U. S. 310, 316–318.

The views we have expressed find support in many decisions, among which the following are good examples: *People* v. *Malkin, supra; People* v. *Esposito*, 224 N. Y. 370, 375–377; 121 N. E. 344; *Johnson* v. *United States, supra; Cook* v. *Commonwealth*, 86 Ky. 663, 665–667; 7 S. W. 155; *Gale* v. *People*, 26 Mich. 157; *People* v. *Wells*, 100 Cal. 459; 34 Pac. 1078. The case last cited is especially apposite.

*Judgment reversed.*