## PERRY v. UNITED STATES.

No. 2662.

Circuit Court of Appeals, Tenth Circuit.

May 27, 1943.

Charles B. Barker and Romeo Cunningham, both of Santa Fe, N. M., for appellant.

Howard F. Houk, U. S. Atty., of Santa Fe, N. M., for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, Franklin Perry, was tried and convicted on counts 4 and 5 of an indictment containing 5 counts, each charging a separate use of the United States mails to defraud in violation of Section 215 of the Criminal Code, 35 Stat. 1130, 18 U.S.C.A. § 338. Counts 1, 2 and 3 were dismissed and appellant was sentenced to imprisonment for eight months on each of counts 4 and 5 to run concurrently. On appeal, the appellant complains (1) of a fatal variance in the allegations of the indictment and the proof in support of each of the counts on which he was convicted, and (2) the insufficiency of the evidence to sustain a verdict of guilty on either count of the indictment.

In conventional form, the indictment charges the appellant with having devised and intending to devise a continuing scheme and artifice to defraud and obtain money and property by false and fraudulent pretenses from William J. Dietrich, Albert W. Willauer, Mabel Willauer, and others including the public generally, by inducing them to pay money to the defendant for assignments of oil and gas leases on lands located in New Mexico, and with having used the United States mails in the execution of the said scheme.

As a part of said scheme and artifice to defraud, count 4 of the indictment charges that some time prior to the 30th day of September, 1938, the defendant represented to those to be defrauded that he had obtained an oil and gas lease on approxi-

mately 2,000 acres of public lands located in New Mexico from the Commissioner of Public Lands, when in truth and in fact he had obtained the said lease from and through an oil lease broker in Santa Fe, New Mexico. It is further alleged that for the purpose of selling small tracts of the lease by assignment to those who could be induced to purchase the same, defendant represented that the assignments so offered for sale were located in "extremely active territory" where development then being undertaken in the immediate vicinity would prove the value of the leases within four months to one year; that by reason of this development, those purchasing the assignments would have an opportunity to sell the same, and the defendant would resell the assignments for the purchasers at a large profit. It is alleged that the foregoing representations, promises, and pretenses were knowingly false and fraudulent, and were knowingly made for the purpose of inducing those to be defrauded to purchase the assignments of oil and gas leases. It is further alleged that for the purpose of executing the scheme to defraud, defendant did on or about the 30th day of September, 1938, cause to be placed in the United States Post Office at Santa Fe, New Mexico, to be sent and delivered by the Post Office Establishment of the United States, a post-paid envelope addressed to Albert W. and Mabel I. Willauer, 32 East 11th Street, Quakertown, Pennsylvania, containing an assignment of oil and gas lease from the defendant covering certain described lands in the State of New Mexico. The envelope and lease assignment were attached to the indictment and made a part thereof, and the assignment shows upon its face that it was part of an oil and gas lease made by the State of New Mexico to Franklin Perry under date of March 29, 1938, and was not a part of an oil and gas lease acquired from a lease broker as elsewhere alleged in the indictment.

Count 5, after incorporating by reference the scheme to defraud alleged in count 4, charges that on or about the 11th day of August, 1938, the defendant caused to be placed in the United States Post Office at Santa Fe, New Mexico, a post paid envelope addressed to William J. Dietrich, 32 North 12th Street, Allentown, Pennsylvania, containing an assignment of oil and gas lease from Franklin Perry and wife to William J. Dietrich, covering certain described lands in New Mexico. The en-

velope and assignment were attached to the indictment and made a part thereof, and the assignment showed upon its face that it was a part of an oil and gas lease made by the State of New Mexico to Franklin Perry under date of March 29, 1938, and not from an oil lease broker as elsewhere alleged in the indictment.

On a trial of the case, the Government offered in evidence the lease assignment to Albert W. and Mabel I. Willauer, which was attached to and made a part of count 4 of the indictment, together with the envelope in which the said assignment is alleged to have been transmitted to the assignees. The defendant objected to the introduction of the assignment on the grounds that it showed upon its face that it was issued from a lease which the defendant Perry had obtained from the State of New Mexico, and that it was not purchased by him from an oil lease broker in Santa Fe as alleged in the indictment. The objection was overruled and the lease assignment, together with the envelope in which it was transmitted to Albert W. and Mabel I. Willauer, was admitted in evidence. Likewise, the Government offered in evidence the lease assignment from the defendant and wife to William J. Dietrich, which was attached to and made a part of count 5 of the indictment. The defendant made the same objections and the lease assignment, together with the envelope in which the same was transmitted to the lessee, was admitted in evidence. Thus it is established beyond dispute from the facts appearing in the indictment, as well as the proof adduced on the trial of the case by the Government, that the lease from which the assignments were made was obtained directly from the Commissioner of Public Lands of the State of New Mexico, and not from an oil lease broker as alleged in the indictment, hence there were no false representations concerning the source of the lease, but rather the indictment itself refutes the allegations of fraud concerning representations made in connection with the source of the lease.

■ Under these facts, a fatal variance in the indictment and proof is urged as grounds for reversal. The variance arises from the allegations in the indictment to the effect that the defendant represented that the lease offered for sale was obtained directly from the State of New Mexico, when in truth and in fact it was obtained from an oil lease broker in Santa Fe,

whereas the exhibits attached to the indictment, and introduced in evidence, show upon their face that the lease was obtained directly from the Commissioner of Public Lands of the State of New Mexico as represented. The legal consequence of this inconsistency in the indictment is that the indictment itself refutes any fraudulent representations concerning the source of the lease. It is not a fatal variance in the sense that the accused is not definitely informed of the charges against him so that he can present his defense, is misled or surprised by the evidence offered at the trial, and, moreover, the defendant is amply protected against prosecution for the same offense. This is so because the indictment on its face disproves the allegation of fraud in connection with the source of the lease. The variance appearing upon the face of the indictment does not prejudice the substantial rights of the defendant, but rather proves his innocence of that particular charge against him. Cf. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

■ The gist of the offense as charged in the indictment is in devising or intending to devise a scheme to defraud by the sale of oil and gas leases to those to be defrauded, by means of false and fraudulent representations, promises and pretenses concerning the value of the leases, and the use of the mails in the execution of the scheme. The source of the lease is material only insofar as it tends to establish the false and fraudulent character of the representations alleged to have been made. The question of whether the defendant devised a scheme to defraud and used the mails in the execution thereof was submitted to the jury under proper instructions, and the jury returned a verdict of guilty on the counts submitted to it. The sole question then is whether the evidence is sufficient to make out a case for the jury.

The proof introduced in support of the allegations of fraud contained in count 4 of the indictment fairly summarized is as follows: The defendant first met the Willauers in June 1938. After having made three visits to their home, he produced so-called oil maps, purporting to show producing oil wells and their geographical and geological proximity and relationship to the oil lease he owned and proposed to sell to the Willauers. At first the Willauers were not interested, but he continued to call, "he said he wanted to make us rich; you cannot lose any money in these things; he tried to explain how good this was, why we could make money; we couldn't lose money in this thing; there were wells." He represented that a big company owned land around and in the vicinity of his lease, that in some places they were ready to start drilling, and if they found oil, the big companies would want to buy the leases at a big price. Finally the Willauers decided to invest $100, but the defendant "didn't want to hear about $100.00", and after further negotiations, the defendant entered into a so-called partnership arrangement wherein the Willauers agreed to invest $200 and Perry $200. In this manner, the Willauers were led to believe that they were buying an interest in leases which Perry wanted to keep for himself. The Willauers were finally induced to invest a total of $500.

■ The lease assignment delivered to the Willauers through the United States mails covered five 40-acre tracts from the 2,000-acre lease which the defendant had obtained from the State of New Mexico, for which he had paid the sum of $130. The nearest oil production to the leases sold was approximately sixty to one hundred miles, and according to the testimony of a geologist, the territory in which the leases were located was not considered likely oil territory; there was no activity at or near the leases, and nothing to support the representations made by defendant to the Willauers concerning the value of the leases for oil and gas. Contemporaneously with the consummation of the sale, the Willauers signed a "Purchase Contract" which recited that the purchaser understood the investment was speculative, and that no promise of any nature had been made to repurchase any of the leases, but the Willauers testified that they were unfamiliar with the oil business, did not know how to interpret the maps produced by Perry, and were induced to purchase the leases only after the persistent representations by defendant that they could not lose, and would make enormous profits. Undoubtedly, the representations made by defendant were highly exaggerated and unsupported by any geological facts or data. Whether they were fraudulently made as a part of a fraudulent scheme was a question for the jury; the jury resolved the question against the defendant and its verdict will not be disturbed here.

The defendant challenges the evidence of mailing as insufficient to show the use of the mails in the execution of the scheme. It is sufficient to say in this connection that the envelope containing the assignment of oil and gas lease, which is the subject matter of the fraud, was attached to count 4 of the indictment and made a part thereof, and was introduced in evidence without objection to the sufficiency of the proof of mailing. The Willauers testified that the assignment was received by them through the United States mails, and the facts otherwise undeniably show that the assignment which the Willauers received through the mails was placed in the Post Office at Santa Fe, to be transmitted to the addressees in Pennsylvania. Cf. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861. We conclude that the evidence is sufficient to support the scheme as alleged in count 4, and that the mails were used in the execution thereof.

The evidence offered in support of count 5 of the indictment follows somewhat the same pattern as count 4. From this evidence, the jury was justified in finding that the defendant devised or intended to devise a scheme to defraud William J. Dietrich. The proof in support of the use of the mails in the execution of the scheme is direct and positive, and the verdict will not be disturbed.

The judgment is affirmed.