**John C. FULLER, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 3542.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1964.

Decided Nov. 20, 1964.

Paul Reiber, Washington, D. C., for appellant.

David P. Sutton, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge.

Appellant, convicted of making an obscene and indecent exposure of his person in the presence of a child knowing the said child to be under sixteen years of age,[1] seeks reversal on several claims of error. We find merit only in the claim that the conduct of the prosecuting attorney was so prejudicial as to prevent appellant from receiving a fair trial.

Although identified by the complaining witness, her younger brother, and an adult neighbor, appellant denied being present at the scene where the alleged offense took place. The identifications were subject to question because the witnesses had never seen appellant before the occurrence, and at the time saw the wrongdoer only briefly while he was seated in an automobile.[2] Much of the trial centered on the question whether appellant prior to trial had admitted committing the offense. The question of this admission was first injected into the trial by the prosecuting attorney who, in his opening statement to the jury, said:

> "During the course of the [preliminary] hearing when it was pointed out as to all the circumstances with regard to the occurrence, then he [appellant] said that he did do it and he agreed to take psychiatric treatment."

Detective Hardy, a government witness, testified that appellant, after being questioned, stated he was sorry for what he had done and did not know any reason why he had made such an exposure at the time. Detective Hardy testified this admission

---

1. D.C.Code 1961 § 22–1112(b).

2. Two of the witnesses noted the license tag number of the automobile, and appellant admitted having an automobile bearing such tag number.

was made by appellant in the presence of Mr. L'Hommedieu, a member of the Bar, but Mr. L'Hommedieu testified no such admission was made in his presence.

Appellant, testifying in his own behalf, denied admitting to detective Hardy or to anyone that he had made an admission of guilt. On cross-examination of appellant by the prosecuting attorney there were the following questions and answers:

"Q. Is it not a fact I asked you what you wanted to do, and your reply to me was: 'I am sorry for what I did, and I want to get——', and you used the word 'doctor's help.'

"Do you deny that?

"A. Yes, sir, I do deny that.

*   *   *   *   *   *

"Q. Mr. Fuller, do you deny that when you and your attorney came into my office, that I said to you: 'Do you have a doctor's report with you?' Do you deny that?

"A. I don't remember you ever asking me.

*   *   *   *   *   *

"Q. Is it not a fact that you and your attorney, both of you, on the occasion you came to my office, tried to plead with me not to proceed with this prosecution. Do you deny that?

"A. Tried to plead with you?

"Q. Yes, to ask me to please not to prosecute you?

"A. No, sir, I don't remember that."

In closing argument to the jury the prosecuting attorney said:

"I have a duty and that duty is to see that justice is done, and I can assure you that I would be the last person to try and convict somebody I believed to be innocent if there were grounds upon which a reasonable person could believe otherwise.

*   *   *   *   *   *

"*   *   *   I have had thirty four years of service and this is the reason why I am here, and I am rather surprised that after all those years of service I find myself to be such a stinker as you have heard this person state I am.

*   *   *   *   *   *

"Would I let the man talk to this lawyer as long as he did and then let him come back and sit in the room and try to beat him over the head and make him confess—to accomplish what?

*   *   *   *   *   *

"My Lord, I can truthfully say that I have never in my life told any witness what to say and the man who will do that doesn't deserve the job of being prosecutor. And if I were the kind of person that would do that, do you think the government would have kept me all these years?

"Don't you think someone else would have complained? Ask any lawyer that knows me whether I have ever been crooked about anything—in any case."

We think it is obvious that the conduct of the prosecuting attorney was highly improper. By his questions he suggested to the jury that appellant had admitted his guilt to the prosecutor and had begged him not to prosecute. Nothing could have been more damaging to the defense, for, as the Supreme Court has said, the average jury has confidence in the integrity of the prosecuting attorney and as a result "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." [3]

Here the prosecuting attorney having indirectly put before the jury his own unsworn testimony that appellant had admitted his guilt, argued to the jury that his testimony was entitled to more weight than appellant's denial. In effect, the prosecu-

---

3. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

tor assumed the role of a witness free from the obligation of testifying under oath, subject to cross-examination.

Although the conduct of the prosecutor was for the most part unobjected to by counsel for appellant, the error is so plain we must consider it even in the absence of objection. The government argues that because of lack of objection and because there was ample evidence to sustain the conviction, the conduct of the prosecutor, even if improper, did not constitute prejudicial error warranting a reversal. We do not agree. There was evidence which, if accepted by the jury, would sustain a conviction, but it is not possible to say that the prosecutor's conduct did not influence the jury in accepting the evidence offered by the government. We are not here dealing with a technical error occurring as an isolated event in the course of a trial. We are confronted with a course of conduct throughout the trial which deprived the appellant of his fundamental right to a fair trial.

Reversed with instructions to grant a new trial.