**Antoine BANKHEAD, Respondent,**

v.

**STATE of Missouri, Appellant.**

No. ED 84879.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 10, 2006.

Leslie E. McNamara, Jefferson City, MO, for appellant.

Craig Allan Johnston, Columbia, MO, for respondent.

BOOKER T. SHAW, Judge.

State of Missouri ("State") appeals from the motion court's judgment granting Antoine Bankhead's ("Bankhead") Rule 29.15 post-conviction relief motion awarding him a new trial. Bankhead was convicted after a jury trial of second degree murder, Section 565.021, RSMo 2000,[1] first degree robbery, Section 569.020, and two counts of armed criminal action, Section 571.015. Bankhead was sentenced to forty years' imprisonment. The motion court granted Bankhead a new trial after finding State violated Bankhead's due process rights by presenting inconsistent prosecutorial theories during his trial and the prosecution of two co-defendants.[2]

## Statement of Facts and Procedural History

On July 30, 2000, Demetrius Pascal ("Victim") was leaving a Schnucks grocery store ("Schnucks") parking lot around 10:00 p.m. He stopped his car in the parking lot to speak to two women. Two men approached Victim in his car to rob him. During the robbery, Victim exited his car and a scuffle ensued. One of the men, Martez Shadwick ("Shadwick"), shot Vic-

tim. Victim then ran toward the front of Schnucks. Shadwick and the other man with him entered Victim's car and drove out of the parking lot. Shortly thereafter, a black SUV on Schnucks parking lot sped away and left through another parking lot exit. These two vehicles were then seen speeding away from the scene side-by-side. Victim subsequently died.

The next day, Alvin Washington ("Washington") was found driving a 2000 Nissan Pathfinder ("Pathfinder") that was stolen from Trisha Rush ("Rush").[3] The Pathfinder matched the description of the SUV that left the scene shortly after Shadwick and the other man sped away in Victim's car. Police officers stopped the Pathfinder and found a gun, later determined to be the murder weapon, and a hat that fit the description of that worn by the two men in the Pathfinder. The officers also found Victim's car, which had been stripped and burned. Two weeks later, the officers arrested I.V. Simms ("Simms") and Antoine Bankhead ("Bankhead").

Three men, Shadwick, Washington and Bankhead were charged with the robbery and murder of Victim, along with related armed criminal action counts, before three different judges. All three men were prosecuted by the same Assistant Circuit Attorney ("Prosecutor"). Simms was not charged with a crime relating to Victim.

### Washington's Guilty Plea

On September 21, 2001, before Judge Jimmie M. Edwards, Washington pled guilty to murder in the second degree, Section 565.021, robbery in the first de-

---

1. All further statutory references are to RSMo 2000, unless otherwise indicated.

2. Bankhead cross-appeals and argues the motion court erred in denying his claims for ineffective assistance of trial counsel because his counsel failed to object to or present cer-

tain evidence at trial. Because we affirm the motion court's judgment, we need not address Bankhead's cross-appeal requesting the same relief.

3. At the time of the crimes, Rush was not yet married and her name was Trisha Patton.

gree, Section 569.020, and two counts of armed criminal action, Section 571.015. At Washington's guilty plea hearing, the Prosecutor stated the following:

> If this matter had went to trial, the State would show beyond a reasonable doubt that ... this defendant and others, specifically Martez Shadwick, Antoine Bankhead and a third person, I.V. Simms, went onto the parking lot at the Schnucks store located at that location ... and while at that location, *this defendant [Washington] and Martez Shadwick decided to take it upon themselves to rob one Demetrius Paschall [sic]. They* approached Mr. Paschall [sic] and, after *they* approached Mr. Paschall [sic] and announced a robbery and took property from him, *this defendant [Washington], acting with Martez Shadwick, Martez Shadwick pulled out a gun and shot Mr. Paschall [sic].* Mr. Paschall [sic] died of his injuries. This defendant left the scene with Mr. Shadwick in the victim's car. The other two people with him, I.V. Simms and Antoine Bankhead, also left the scene.

(Emphasis added). When asked by Judge Edwards, "Did that happen, Mr. Washington?," Washington replied, "Yes, sir." Washington admitted that he drove Victim's car away from the scene after the robbery. He also admitted that he was in possession of the murder weapon, a .380 automatic handgun. He identified Shadwick as the one who "pulled the trigger." Washington was sentenced to four concurrent terms of twenty-five years' imprisonment for these crimes.

### Shadwick's Trial

On June 20, 2002, Shadwick was convicted of first degree murder, Section 565.020, first degree robbery, Section 569.020, and two counts of armed criminal action, Section 571.015, after a bench trial by Judge Joan L. Moriarty. Shadwick was sentenced to two concurrent terms of life imprisonment and two concurrent terms of thirty years' imprisonment. During opening statement, the Prosecutor stated the following:

> And as [Victim] conversed with Ms. Brown and Ms. Perkins about this, that and the other, this Defendant [Shadwick] happened to be on that parking lot also, along with Alvin Washington, I.V. Simms and Antoine Bankhead, and they were on that parking lot having gotten there driving Trisha Patton's [stolen] 2000 Nissan Pathfinder.
>
> And as the victim was in his car talking to these two young ladies, *this Defendant [Shadwick] and Alvin Washington approached his car,* and they put on ball hats and they put on gold or yellow bandanas to help cover their face, and they approached from two different areas the victim's car. And the girls saw this coming up here, so they pulled away in their car to get out of danger.
>
> *And the Defendant and Mr. Washington approached [Victim],* and they were armed with weapons. And we believe that Martez Shadwick was the one who had the gun.
>
> And there were other people on the car lot on that particular night. And they approached the Defendant [sic], they demanded of him certain personal property, and when he refused to give them that property and attempted to run away, they shot him.
>
> I believe two shots rang out. And as [Victim] ran away from them, he ran towards the front door of the Schnuck's [sic] store. They were still in business and operating on that particular evening. And he ran from his car away from the Defendants, they shot at him. He got to the door, basically to the door of the Schnuck's [sic] store where he

collapsed. He had a bullet wound to his chest, and he died of his injuries.

*The Defendant and Mr. Washington then got into [Victim's] car, the Lincoln Continental, and drove it off the lot.* And they were followed off of that lot by two other individuals, I.V. Simms and "Antuwan" [sic] Bankhead, still driving the stolen Pathfinder.

Not only were there witnesses on the particular parking lot that saw this particular event happen, and they were at various and sundry different angles and will be able to testify to what they saw, but five of those individuals identified *the Defendant* as being the person who drove the victim's car off the lot, and *several of them will identify Mr. Washington as being the passenger.* And they will also identify the Defendant as being the shooter of [Victim].

(Emphasis added).

At Shadwick's trial, Rush testified that on July 23, 2000, her Pathfinder was stolen while she was at a gas station. Rush saw two men drive away in her Pathfinder. She identified Shadwick as the driver of her Pathfinder and Washington as the passenger. Two other African–American men had been with Shadwick and Washington, but they drove off in another vehicle.

Six eyewitnesses testified at Shadwick's trial. Tonya Otto ("Otto") and Jamaica Frazier ("Frazier") witnessed the robbery and murder of Victim. Otto testified that Shadwick was the accomplice who drove away in Victim's car.[4] The Prosecutor did not ask her to specifically identify the photograph of the other suspect with Shadwick. On cross-examination, Otto identified Washington as the other suspect in Victim's car. Frazier was unable to make any identification of the suspects.

Ella Bingham ("Bingham") identified Shadwick and Washington as the two men in Victim's car. She was unable, however, to make a courtroom identification of Shadwick. Joseph Alexander ("Alexander") testified that Shadwick and Washington were the two suspects involved in the crimes against Victim.

Norvette Brown ("Brown") and Aisha Perkins ("Perkins") were in a parked vehicle on Schnucks' parking lot when the crimes occurred. Brown identified Shadwick as the suspect who shot Victim. She was not asked by the Prosecutor to identify the other suspect. Perkins, too, identified Shadwick as one of the suspects, but was not asked by the Prosecutor to make an identification of the other suspect. On cross-examination, Perkins testified she was not able to make an identification of anyone else.

During closing argument, the Prosecutor made the following statement:

What did Joseph Alexander say? Joseph Alexander said I saw the flash of a gun. These two guys were in the car, same identification: I don't know who the driver was, who the passenger was. *This guy [Shadwick] and Washington were the guys.* What did he say about the shooting? "I don't know which one did the shooting, but there were two guys there, and *it was this guy [Shadwick] and Washington.*"

(Emphasis added). Later the Prosecutor added, "Yeah, Alvin Washington got caught in the Pathfinder, but who is *Alvin Washington? The guy that was with*

---

4. There appears to be some discrepancy in the testimony of the witnesses as to which suspect was the "darker-skinned" suspect and which suspect was the "lighter-skinned" one. Regardless of this discrepancy, however, the testimony elicited by the Prosecutor at *Shadwick's trial* was that the two suspects involved in these crimes against Victim were *Shadwick* and *Washington.*

*[Shadwick] when he did the shooting."* (Emphasis added).

### Bankhead's Trial

In July of 2002, before Judge Joan M. Burger, Bankhead proceeded to trial by jury on the robbery and murder charges. The following evidence was presented by the State at Bankhead's trial. Four of the eyewitnesses who testified at Shadwick's trial also testified at Bankhead's trial: Otto, Perkins, Frazier, and Brown. Notably, neither Bingham nor Alexander testified at Bankhead's trial.

At Bankhead's trial, Otto identified Shadwick as the driver of Victim's car and Bankhead as the passenger of the car.[5] At Shadwick's trial, the Prosecutor did not ask her to identify anyone other than Shadwick. On cross-examination at Shadwick's trial, however, Otto identified Washington as the passenger of Victim's car.

Perkins testified at Bankhead's trial that the two men involved in the crimes against Victim were Shadwick and Bankhead. At Shadwick's trial, however, Perkins only identified Shadwick as one of the suspects, but said she was not able to make an identification of anyone else. Frazier was again unable to make any identification of the suspects.

Brown identified Shadwick as the suspect who shot Victim in Schnucks' parking lot and identified Bankhead as the other suspect with him. At Shadwick's trial, she also identified Shadwick as the man who shot Victim, but she was not asked by the Prosecutor to identify the other suspect. Although on cross-examination at Shadwick's trial Brown testified she also made an identification of the other suspect when she reviewed lineup photographs, she was not asked to give that man's identity.

At the close of the evidence, the Prosecutor stated to the jury in pertinent part:

*Now, you heard uncontradicted evidence from the witness stand that there were two people that went to Demetrius Paschal [sic] on that parking lot,* uncontradicted evidence. *Uncontradicted evidence as to who those two people were, Martez Shadwick and the defendant [Bankhead].* Absolutely nothing that you heard in this courtroom would contradict that these are the two people that approached Demetrius Paschal [sic] after he went onto the Schnucks' parking lot and started a conversation with Norvette Brown and Aisha Perkins. In fact, you heard from those two particular people, and those two particular people on August the 1st, two days later, identified the defendant [Bankhead] as one of those two people. Didn't just say he was one of them. Here's the other one. Martez Shadwick and the defendant [Bankhead]. Absolutely there can be no doubt these are the people they identified . . . .

(Emphasis added). Later, the Prosecutor added:

That is the truth, ladies and gentlemen. The truth is [Bankhead] was the second guy, not that he was on the parking lot. He was the second guy. He was one of the two guys that drove away in the victim's car. . . . *There can be no doubt from these witnesses [Bankhead] was the second guy with Martez Shadwick.*

(Emphasis added).

On July 3, 2002, Bankhead was convicted of second degree murder, Section

---

5. Again, it appears a discrepancy exists in the testimony of the witnesses as to which suspect was the "darker-skinned" suspect and which suspect was the "lighter-skinned" one. Regardless of this discrepancy, however, the testimony elicited by the Prosecutor at *Bankhead's trial* was that the two suspects involved in these crimes against Victim were *Shadwick* and *Bankhead*.

565.021, first degree robbery, Section 569.020, and two counts of armed criminal action, Section 571.015, Bankhead was sentenced to a term of thirty years' imprisonment for first degree robbery and a consecutive term of ten years' imprisonment for armed criminal action. He was also sentenced to a concurrent term of ten years' imprisonment for second degree murder and a consecutive term of ten years' imprisonment for armed criminal action. This Court affirmed Bankhead's convictions in *State v. Bankhead*, 114 S.W.3d 432 (Mo.App. E.D.2003). After his convictions were affirmed by this Court, Bankhead filed an amended Rule 29.15 motion for post-conviction relief. The motion court granted Bankhead a new trial based upon his claim that State violated his due process rights by presenting contradictory prosecutorial theories during his trial and the prosecution of two co-defendants. State appeals.

### Analysis

■ In its only point on appeal, the State argues the motion court erred in finding it violated due process of law by presenting inconsistent prosecutorial theories during Bankhead's trial and the prosecution of two co-defendants because the State's core theory was that Shadwick was the principal actor who shot Victim during the robbery, and the State consistently argued that Bankhead and Washington were involved with Shadwick as accomplices. We disagree.

■ Our review of a motion court's Rule 29.15 proceeding is "limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). Findings of fact and conclusions of law are clearly erroneous only if, after review of the entire record, the court is left with a definite and firm impression that a mistake has been made. *Lyons v. State*, 39 S.W.3d 32, 36 (Mo. banc 2001), *cert. denied*, 534 U.S. 976, 122 S.Ct. 402, 151 L.Ed.2d 305 (2001).

■ The State's fundamental interest in criminal prosecutions is "not that it shall win a case, but that justice shall be done." *Smith v. Groose*, 205 F.3d 1045, 1049 (8th Cir.2000), *cert. denied*, 531 U.S. 985, 121 S.Ct. 441, 148 L.Ed.2d 446 (2000) (citing *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). "Although the prosecutor must prosecute with earnestness and vigor and 'may strike hard blows, he is not at liberty to strike foul ones.'" *Id.* "[Our criminal] system is poorly served when a prosecutor, the [S]tate's own instrument of justice, stacks the deck in his favor. The State's duty to its citizens does not allow it to pursue as many convictions as possible without regard to fairness and the search for truth." *Id.* at 1051.

■ While prosecutors are not required to present precisely the same evidence and theories in trial for different defendants involved in the same crimes, the use of theories that are factually contradictory to secure convictions against two or more defendants in prosecutions for the same offenses arising out of the same event violates the principles of due process. *Id.* at 1052; *State v. Carter*, 71 S.W.3d 267, 271–72 (Mo.App. S.D.2002) ("'the use of inherently factually contradictory theories [by the prosecutor] violates the principles of due process.'") (quoting *Groose*, 205 F.3d at 1052); *See In re Sakarias*, 35 Cal.4th 140, 25 Cal.Rptr.3d 265, 106 P.3d 931, 947 (2005), *petition for cert. filed*, (U.S. June 30, 2005) (No. 05–5114) (explaining "the prosecutor's unjustified use of inconsistent and irreconcilable factual theories to convict two people of a crime only one could have committed ... violates due process because in those circumstances the state has necessarily convicted

or sentenced a person on a false factual basis.")

We find the Prosecutor's conduct in this case similar to the conduct of the prosecutor in the *Groose* case. In *Groose*, the Eighth Circuit Court of Appeals granted a writ of *habeas corpus* because the prosecutor's use of inconsistent theories to convict two defendants of murdering the same person violated the defendant Jon Keith Smith's ("Smith") due process rights. *Groose*, 205 F.3d at 1047. The same prosecutor prosecuted Smith and Michael Cunningham ("Cunningham") for murder. *Id.* at 1050. A state's witness, Anthony Lytle ("Lytle") had given two contradictory statements to police, one on November 30, 1983, and the other on December 2, 1983. During Smith's trial, the prosecutor asserted that Lytle's statement to the police on December 2, 1983 was the truth. *Id.* Later, during Cunningham's trial, the prosecutor argued that Lytle's November 30, 1983 statement was the truth and did not introduce evidence of Lytle's December 2, 1983 statement to the police. In other words, the prosecutor selectively chose to use Lytle's December 2, 1983 statement to convict Smith and then subsequently at Cunningham's trial, selectively chose to use Lytle's contradictory November 30, 1983 statement to convict Cunningham of the same crime. *Id.* at 1051. "In short, what the State claimed to be true in Smith's case it rejected in Cunningham's case, and vice versa." *Id.* at 1050. Lytle's testimony at these trials was the only evidence of the murders that took place and constituted the sole basis for Smith and Cunningham's two different convictions on two contradictory theories. *Id.* at 1051.

On appeal, Smith argued the prosecutor's manipulation of the evidence presented at trial violated his due process rights and caused his trial to be fundamentally unfair. *Id.* The Eighth Circuit agreed with Smith and held that the State's use of factually contradictory theories in his case constituted error that "fatally infected Smith's conviction." *Id.* Specifically, the Court held that "the State's zeal to obtain multiple murder convictions on diametrically opposed testimony renders Smith's conviction infirm." *Id.* at 1052.

Here, similar to *Groose*, the Prosecutor selectively presented contradictory evidence and arguments in three different cases depending upon which defendant was before the trial court. The only consistent theory argued by the Prosecutor in all three cases was that Shadwick was Victim's shooter. It was the identity of the accomplice who accompanied Shadwick that varied, depending upon which defendant was being prosecuted.

In Washington's guilty plea, Washington admitted to being the accomplice and the Prosecutor told the trial court that Washington was the person who, along with Shadwick, robbed and killed Victim.

In Shadwick's trial, the Prosecutor told the jury in opening statement that it was Washington who approached Victim with Shadwick. Consistent with that theory, the Prosecutor questioned two witnesses, Bingham and Alexander, regarding the identity of Shadwick and Washington as the two men involved in the crimes. Three other eyewitnesses, Brown, Perkins, and Otto, identified Shadwick but the Prosecutor did not question them about the identity of the accomplice.

Less than two weeks after Shadwick's trial, Bankhead was tried by the Prosecutor before a jury for Victim's robbery and murder. At Bankhead's trial, however, the Prosecutor presented evidence and argued that the two men who robbed and killed Victim were Shadwick and Bankhead. In Bankhead's trial, the Prosecutor questioned Brown, Perkins, and Otto regarding the identity of Shadwick's accom-

plice, and they identified Bankhead. The Prosecutor did not call as witnesses either Bingham or Alexander, who testified at Shadwick's trial that Washington was his accomplice.

In conclusion, the same Prosecutor used two contradictory theories to obtain convictions against three individuals before three trial judges. The State's evidence proved the complicity of only two individuals in these crimes, however, three were charged and convicted. Based upon this evidence, we agree with the motion court's granting of Bankhead's Rule 29.15 motion, finding "[t]he [S]tate's use of inconsistent prosecutorial theories violated [Bankhead's] due process rights in a way that rendered his conviction fundamentally unfair." Following the holding of *Groose*, we hold that while the Prosecutor was not required to present the same evidence and theories in pursuing the convictions of Shadwick, Washington and Bankhead, the use of theories that were factually contradictory to secure the convictions in this case for the same robbery and murder violated the principles of due process. *See Groose*, 205 F.3d at 1052. Point denied.

AFFIRMED.

GLENN A. NORTON., C.J., and LAWRENCE E. MOONEY, J., Concur.