OPINION
{¶ 1} Defendant-appellant Amber Swain appeals from her conviction and sentence for Murder. She contends that the trial court erred by overruling her objection to a demonstration by the prosecutor, during closing argument, involving slamming a doll into a table to represent the alleged manner in which the infant victim's fatal injuries were inflicted. The State, in cross-examining Swain, had elicited a demonstration by *Page 2 
her, using the doll, of the force with which she had shaken the child. We conclude that the prosecutor could fairly use the doll in this manner to demonstrate to the jury the greater force that he contended would have been necessary to inflict the fatal injuries sustained by the child. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} Swain was charged by indictment with the Murder and Involuntary Manslaughter of her daughter, Sarenity Bailey, who was five months old when she died. When Swain called 911 to seek treatment for her daughter, she reported that she had tripped and fallen down the stairs, while carrying her daughter, resulting in the injuries to her daughter. Swain testified at her trial, and acknowledged that she had made that story up, that what had really happened was that she had shaken her daughter, inadvertently causing her daughter's head to come into contact with a hard object.
 {¶ 3} The prosecutor asked Swain to demonstrate for the jury how she had shaken her daughter, using a doll, and the following colloquy occurred:
 {¶ 4} "Q. I want you to take that doll, stand in front of this jury, show them how you shook your baby.
 {¶ 5} "A. (Complies with request.) Like this.
 {¶ 6} "Q. Okay. And that was it?
 {¶ 7} "A. Yes. I can't mimic the exact incident. It's been a long time.
 {¶ 8} "Q. You grabbed her up under the armpits?
 {¶ 9} "A. Yes.
 {¶ 10} "Q. How far from your body did you hold her? *Page 3 
 {¶ 11} "A. Maybe a foot or more.
 {¶ 12} "Q. And all you did right there was something like this. (Indicating.)
 {¶ 13} "A. Yeah.
 {¶ 14} "Q. That was it?
 {¶ 15} "A. Yes. That's it.
 {¶ 16} "Q. And in doing that, her head hit something?
 {¶ 17} "A. Yes.
 {¶ 18} "Q. If you could, take that doll and demonstrate how it hit. You can use the Judge's bench.
 {¶ 19} "A. I'm not sure because it was dark.
 {¶ 20} "Q. Okay. Did it hit hard?
 {¶ 21} "A. Yes, it did.
 {¶ 22} "Q. But right there you weren't even really shaking very hard.
 {¶ 23} "A. Well, I was just trying to mimic it for you like you asked me to do.
 {¶ 24} "Q. Well, did you mimic how you actually did it that night?
 {¶ 25} "A. Excuse me?
 {¶ 26} "Q. I want you to shake that doll, and I want you to shake that doll like you shook your child that night. Did you do that?
 {¶ 27} "A. I feel like I did.
 {¶ 28} "Q. Okay. So that's all the force with which your child, Sarenity Bailey, hit her head that night, what you just showed the jury? That was it?
 {¶ 29} "A. It could have been possibly stronger. *Page 4 
 {¶ 30} "Q. Okay. Well, show the jury how strong it was.
 {¶ 31} "A. I don't know. Maybe like this. (Indicating.)
 {¶ 32} "Q. And she was crying when she did that?
 {¶ 33} "A. Yes.
 {¶ 34} "Q. Putting on the document camera what's been marked as State's Exhibit 37.
 {¶ 35} "Miss Swain, that's a 3-inch fracture in the back of your daughter's skull; and you want to tell this jury that that's all the force you shook her with that night is this? (Indicating.)
 {¶ 36} "A. Yes, sir, I'm telling you that.
 {¶ 37} "Q. You're 100 percent sure it was nothing more than that?
 {¶ 38} "A. I'm not 100 percent sure of anything, but when I told you-
 {¶ 39} "Q. Okay. Then how hard did you shake her?
 {¶ 40} "A. I just showed you.
 {¶ 41} "Q. And it's your testimony that what you just showed the jury was sufficient to cause a 3-inch fracture in the back of your daughter's head?
 {¶ 42} "A. Yes."
 {¶ 43} During the State's initial closing argument, the following colloquy occurred:
 {¶ 44} "So what tells us what happened to Sarenity Bailey on the evening of December 18, 2004, into the morning of December 19, 2004? A 3-inch skull fracture to the back of her head with a bruise over the top of it, a right forehead bruise, a right cheek bruise, a jaw bruise, a subdural hemotoma on the right hemisphere of her brain, *Page 5 
subarachnoid bleeding, and retinal hemorrhages in both eyes.
 {¶ 45} "These injuries are consistent with significant, violent, multiple blows, multiple impact sites to Sarenity's face and to her head.
 {¶ 46} "I want to take just a couple seconds and talk to you about each one of those groups of injuries.
 {¶ 47} "What did it take to cause that 3-inch fracture to the back of her head? What kind of force did it take? All the experts who came in here and testified, used words like `significant,' `major,' `violent.' You all have life experiences. You all were kids. Many of you have kids. You've seen your kids fall, and you've fell as kids.
 {¶ 48} "Does — does that cause a 3-inch fracture completely through the skull of a child's head? (Indicating.) We know those bones are soft. We know they're pliable. We know kids are designed to — to take falls.
 {¶ 49} "What force does it take? Is it this? (Indicating.) Is that what it takes?
 {¶ 50} "MR. MERRELL [representing Swain]: I object, Your Honor. Move for a mistrial. There was no testimony of anything like that. That's done for nothing but to inflame the jury.
 {¶ 51} "THE COURT: Overruled. These are arguments of counsel.
 {¶ 52} "MR. MERRELL: Would the record reflect what he just did, then, `cause I — I want to — can we approach the bench?
 {¶ 53} "THE COURT: No.
 {¶ 54} "MR. MERRELL: I want the record to reflect, Judge, what he just did for the Court of Appeals. He just took that child, this doll; and he threw it as hard as he could with his hands against a very sharp object and made a very loud sound. There's no evidence *Page 6 
of that, Judge.
 {¶ 55} "THE COURT: There is evidence of a 3-inch skull fracture. These are arguments of counsel.
 {¶ 56} "MR. WILSON [representing the State]: There's evidence that that would take a significant, a major, or a violent blow to the back of head; and it's completely inconsistent with what she showed you and what she testified to. What did it take to cause the bruising to the right side of the head, the right side of the forehead? What was it?
 {¶ 57} "Was it another blow against the solid object? Was that what it was? Was it a punch? Was it a slap? Was it a back hand? What kind of forces did it take to cause that bruise, which we know from the testimony is a separate and distinct injury from the fracture on the back of the head.
 {¶ 58} "What kind of forces did it take to cause the cheek bruise? Again, was it a punch? Was it a slap? (Indicating.) Was it a back hand? (Indicating.) We know from the testimony that that was a separate impact site from the back of the head, and we know from the testimony that that was a separate impact site from the forehead.
 {¶ 59} "What did it take to cause the jaw bruise? What did it take to cause a massive subdural hematoma? Subarachnoid bleeding? And hemorrhages? Bleeding in both of this baby's eyes?
 {¶ 60} "Ladies and gentlemen, I submit that there's much more than a one-to two-second shake with a little — with a little impact. . . ."
 {¶ 61} The jury found Swain guilty on both counts. The trial court merged the Involuntary Manslaughter conviction into the Murder conviction, and sentenced Swain accordingly. From her conviction and sentence, Swain appeals. *Page 7 
 II {¶ 62} Swain's sole assignment of error is as follows:
 {¶ 63} "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FAILED TO TAKE ANY CORRECTIVE MEASURES WHEN CONFRONTED WITH PROSECUTORIAL MISCONDUCT."
 {¶ 64} Swain contends that it was misconduct for the prosecutor to have demonstrated to the jury, during his closing argument, using a doll, the greater force that he contended would have been necessary to have caused the injuries to Swain's daughter, concerning which there was competent medical testimony. Swain cites State v. Luoma (December 7, 1990), Montgomery App. No. 10719, 1990 WL 197944, 1990 Ohio App. LEXIS 5333, for the proposition that although a prosecutor must proceed with "earnestness and vigor, striking hard blows, [he] may not strike foul ones." Berger v. United States (1935), 295 U.S. 78, 88.
 {¶ 65} In Berger, the court was speaking figuratively, rather than literally, but the issue remains whether the demonstration with the doll employed by the prosecutor during closing argument was fair comment. The prosecutor had elicited a demonstration, using a doll — possibly the same one the prosecutor used in closing argument — by Swain of the manner in which she supposedly shook her daughter, causing the injuries when her daughter's head came in contact with a solid object. The prosecutor had obtained medical testimony concerning the horrific, fatal injuries Sarenity Bailey sustained. The prosecutor obviously was trying to persuade the jury that the demonstration by Swain of how she shook her daughter was not plausible, given the severity of the resulting injuries, and that much greater force would have been required to cause those injuries. In our view, this is a *Page 8 
reasonable inference.
 {¶ 66} We see nothing wrong with the prosecutor's having demonstrated, for the benefit of the jury, the greater force that he was arguing would have been necessary to have caused the injuries to Sarenity Bailey, using the doll for that purpose. The demonstration was suggested by the medical evidence of the injuries to Sarenity's head, and was calculated to make it easier for the jury to visualize the contrast between the shaking that Swain had demonstrated, and the more forceful contact with a hard object that the State contended would have been necessary to have caused Sarenity's injuries.
 {¶ 67} In short, we conclude that the prosecutor's demonstration, using the doll, of the greater force he contended would have been necessary to have caused Sarenity's injuries, though a hard blow, was fair, not foul. Swain's sole assignment of error is overruled.
 III {¶ 68} Swain's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 BROGAN and DONOVAN, JJ., concur. *Page 1