850 F.2d 693
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Walter K. GARY, Defendant-Appellant.
 No. 87-6031.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and ODELL HORTON*, District Judge.
 PER CURIAM:
 
 
 1
 Appellant, Walter K. Gary, appeals from a judgment of conviction for conspiracy in violation of 18 U.S.C. Sec. 371 and unlawful transaction with a minor in violation of 18 U.S.C. Sec. 13 (KRS 530.070). For the reasons set forth below, we AFFIRM the judgment of Chief Judge Edward H. Johnstone, United States District Court, Western District of Kentucky.
 
 
 2
 On February 17, 1987, appellant was tried, along with his co-defendant, Derrick Wilson, before a United States Magistrate for the Western District of Kentucky. Initially, appellant was charged by criminal complaint with unlawful transaction with a minor, 18 U.S.C. Sec. 13. Subsequently, a new complaint was filed charging appellant with conspiracy, 18 U.S.C. Sec. 371, larceny, 18 U.S.C. Sec. 13 (KRS 514.030), and unlawful transaction with a minor, 18 U.S.C. Sec. 13 (KRS 530.070).[1]
 
 
 3
 On February 23, 1987, the court sustained appellant's motion for a judgment of acquittal as to larceny, and following oral arguments, found appellant guilty of unlawful transaction with a minor and conspiracy. On March 2, 1987, appellant filed a Motion for Judgment of Acquittal and/or Motion for a New Trial. This motion was denied by the court on May 4, 1987. On June 26, 1987, appellant filed his notice of appeal to the district court. The district court affirmed the judgment, and appellant filed a notice of appeal to this court.
 
 
 4
 On or about November 10, 1986, Kelby Matthews (a juvenile), Derrick Wilson and appellant agreed to go to the Fort Campbell Main Post Exchange ("PX") to steal merchandise. Upon arriving at the PX, the three individuals went together to the jewelry counter. The store manager, Mr. Larry Safho, noticed the three individuals when they left the jewelry counter and headed toward the Four Seasons area of the PX.[2] Mr. Safho became suspicious when the individuals headed toward the Four Seasons area because merchandise was frequently stolen in this area due to its tall fixtures and lack of counters. Mr. Safho initiated close surveillance and was subsequently confronted by appellant. Following the confrontation, Mr. Safho departed the area and notified security personnel to continue the surveillance.
 
 
 5
 Ms. Charyl Smith, a PX security detective, continued the surveillance. She noticed that the three individuals were carrying pants, sweaters and shoes into the Four Seasons area. Matthews testified that he had taken the pants at the direction of the appellant. The three were taking the merchandise to the Four Seasons area outside of the building to stuff it under a fence so it could be picked up by someone on the other side of the fence. When the three individuals emerged from the Four Seasons area, they had no merchandise in their hands. The merchandise was recovered from under a fence outside of the Four Seasons area.
 
 
 6
 Once the three exited the Four Seasons area, Matthews went to the checkout lane, while Wilson and appellant went to the PX lobby to wait for Matthews. Surveillance was maintained on all three individuals. When Wilson and appellant turned to leave the PX, Mr. Safho told them there was a problem and escorted them to the manager's office. While in the manager's office, it was determined that appellant had come to the PX without any money and was unemployed.
 
 
 7
 Appellant proffers two arguments before this court. He initially argues that since the court found that the government had not proven a conspiracy involving an alleged meeting at appellant's home one or two days prior to the activities at the PX on November 10, 1986, a variance existed between the conspiracy charged on November 8-9, 1986, and the proof of the conspiracy on November 10, 1986.[3] We disagree.
 
 
 8
 The variance between the proof of the conspiracy and the conspiracy charged is not fatal to the prosecution in this case. In order to obtain a reversal due to a variance between the indictment and the evidence, a two-prong test must be satisfied: (1) the variance itself must be demonstrated; and (2) the variance must affect some substantial right of the defendant. United States v. Grassi, 616 F.2d 1295, 1302 (5th Cir.), cert. denied, 449 U.S. 956 (1980); United States v. Grunsfeld, 558 F.2d 1231, 1238 (6th Cir.), cert. denied, 434 U.S. 872 and 434 U.S. 1016 (1977). This test is based on the requirements that the accused (1) be informed of the charges against him so that he can prepare a defense; and (2) be protected against later prosecution for the same offense. Berger v. United States, 295 U.S. 78, 82 (1935) (citations omitted).
 
 
 9
 While we note that a variance between the allegations and the proofs has been demonstrated, we find that no substantial rights of appellant were abridged. Appellant was charged with a conspiracy to steal government property at the PX on November 8-9, 1986. The proof showed the conspiracy to steal occurred on November 10, 1986. The object of the alleged conspiracy and the proven conspiracy is the same--the larceny which occurred on November 10, 1986. Also, appellant was aware prior to trial that the pants, the object of the conspiracy for which he was convicted, were involved in the larceny. No new conspirators were introduced by the evidence at trial and appellant had access to all prior written statements of the witnesses for the prosecution. Thus, under Berger, appellant was adequately informed of the charge against him, and there was no risk of double jeopardy.
 
 
 10
 Appellant also contends that the evidence was insufficient to sustain his conviction. We disagree.
 
 
 11
 The standard of review concerning this claim is set out in Jackson v. Virginia, 443 U.S. 307 (1979). The Court stated:
 
 
 12
 But this inquiry does not require a court to 'ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt'.... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.
 
 
 13
 Jackson, 443 U.S. at 318-19 (citations omitted).
 
 
 14
 In the case at bar, the evidence presented by the prosecution was sufficient to convict appellant. The testimony of Detective Smith indicates that the three individuals entered the Four Seasons area carrying merchandise and emerged from the area without the merchandise. The merchandise was later found under a fence in the Four Seasons area. This corroborates the testimony of Matthews, who stated that he was instructed to stuff the merchandise under the fence in the area.[4]
 
 
 15
 Mr. Safho, the PX manager, also testified that the individuals appeared nervous when they were in the Four Seasons area. Indeed, appellant's nervousness surfaced when he confronted Mr. Safho upon realizing that he was being observed. When Mr. Safho asked appellant to return with him to the office because there was a problem, appellant immediately threw his hands in the air and shouted "big Mr. Columbo caught himself a shoplifter." Joint Appendix at 63. The testimony concerning the confrontation and the "Columbo" comment was corroborated by appellant's testimony. Finally, appellant had no money on his person when he was apprehended and was unemployed at the time. Thus, we find that the evidence is sufficient to support the conviction.
 
 
 16
 Accordingly, for the reasons set forth above, we AFFIRM the conviction.
 
 WELLFORD, Circuit Judge, concurring:
 
 17
 The criminal complaint in this case charged defendant Gary with knowingly inducing and assisting a minor to steal, and that he "did conspire with Derrick Wilson and Kelby Matthews, a minor, to commit an offense against the United States." The proof, as pointed out, was to the effect that defendant did indeed plan and connive with Wilson and with Matthews to have the latter engage in shoplifting at an Army post exchange store. There is no reference in the complaint to a specific date of the conspiracy. I would therefore find that there was no variance between the proof adduced and the complaint charges. It is immaterial as to the conspiracy proved to the satisfaction of the judge whether it took place at appellant's home, outside the post exchange, or as the group involved approached and entered the store together, or at one or more of these places and times. I find no merit therefore in the defendant's contention of variance.
 
 
 18
 I agree entirely with the opinion of the court in all other respects and join in affirming the conviction.
 
 
 
 *
 Honorable Odell Horton, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The complaint alleged:
 That the defendant did knowingly induce and assist a minor of 16 years of age to steal at the Main Post Exchange, Fort Campbell, Kentucky; that the defendant did conspire on the Fort Campbell installation with Derrick Wilson and Kelby Matthews, a minor to commit an offense against the United States to wit: theft of property from the AAFES, Main Exchange, an agency of the United States, located at Fort Campbell, Kentucky, and, while the agreement was still in affect and to effect the object of the conspiracy, Kelby Matthews did steal or unlawfully remove property from the AAFES, Main Exchange located at Fort Campbell, Kentucky; and that the defendant, as a member of a conspiracy, did steal one pair of black gloves, brand name, Aris, from the AAFES, Main Exchange on Fort Campbell, Kentucky.
 Joint Appendix at 11.
 
 
 [2]
 The Four Seasons area contains sporting goods and lawn and garden items
 
 
 [3]
 The court stated:
 I do not believe that the government has proved a conspiracy or a specific agreement between six individuals and even if the government did prove such an agreement, I think it is clear that the agreement was abandoned and then it was not even substantially executed. However, I do find that there was an agreement between Mr. Matthews and each of these defendants that they commit, that he commit specific acts of larceny.
 Joint Appendix at 114.
 
 
 [4]
 Although the court found Matthews' testimony to be impeached by prior criminal acts and untrue statements, it noted that the impeachable qualities of the testimony were cured when all of the evidence was viewed in context