STATE OF HAWAI`I, Plaintiff-Appellee,
v.
CHRISTOPHER JOHN KAAHUI, Defendant-Appellant.
No. 28487.
Intermediate Court of Appeals of Hawaii.
August 29, 2008.
On the briefs:
Linda C.R. Jameson, (Law Office of Linda C.R. Jameson), for Defendant-Appellant.
Richard K. Minatoya, Deputy Prosecuting Attorney, County of Maui, for Plaintiff-Appellee.

MEMORANDUM OPINION
WATANABE, Presiding Judge, NAKAMURA, and LEONARD, JJ.
Defendant-Appellant Christopher John Kaahui (Kaahui) appeals from the Judgment filed on March 9, 2007, in the Circuit Court of the Second Circuit (circuit court).[1] A jury found Kaahui guilty as charged of first-degree terroristic threatening, in violation of Hawaii Revised Statutes (HRS) § 707-716(1)(c) (1993)[2] The circuit court sentenced Kaahui to five years of imprisonment, with a mandatory minimum term of twenty months as a repeat offender.
On appeal, Kaahui argues that the Deputy Prosecuting Attorney (DPA) engaged in misconduct amounting to plain error which deprived him of a fair trial. We disagree and affirm the circuit court's Judgment.

BACKGROUND

I.
The first-degree terroristic threatening charge against Kaahui was based on allegations that he threatened Maui Police Officer Kamuela Mawae with a knife. Officer Mawae and Officer Michael Hale, who were both in uniform, were inspecting a vehicle linked to a person wanted in an assault case. Officer Mawae testified that while Officer Hale was shining a flashlight into the vehicle, Officer Mawae noticed Kaahui standing close behind Officer Hale. Officer Mawae asked Kaahui to step back, but Kaahui did not move. Officer Mawae positioned himself between Officer Hale and Kaahui and repeatedly instructed Kaahui to step back. When Kaahui ignored these instructions, Officer Mawae moved Kaahui back with a palm strike to Kaahui's chest. Kaahui, however, stepped forward and again refused to heed Officer Mawae's commands to step back. Officer Mawae then ordered Kaahui to turn around so that Officer Mawae could frisk him for weapons.
Officer Mawae testified that Kaahui reached behind his back and pulled out a black hunting knife with a six-inch blade. Officer Mawae yelled "knife" and hit Kaahui's wrist with a flashlight, causing the knife to fall. Officer Mawae recovered the knife and assisted Officer Hale in subduing Kaahui.
Officer Hale's subsequent testimony was basically consistent with Officer Mawae. However, Officer Hale related that he did not see Officer Mawae palm strike Kaahui. Officer Hale stated that he had been looking in the vehicle and thus may have missed aspects of Officer Mawae's dealings with Kaahui.
Kaahui did not testify. The defense contended that Kaahui was attempting to hand over the knife to Officer Mawae and that Officer Mawae overreacted to Kaahui's actions.

II.
In cross-examining Officer Mawae, Kaahui's counsel questioned Officer Mawae about whether the DPA, in violation of the witness exclusion rule, had discussed Officer Mawae's earlier trial testimony in Officer Hale's presence. Officer Mawae responded, "We talked about the case. Not so much exactly what I said in court." Kaahui's counsel then asked whether the DPA had talked to Officer Mawae about clarifying his previous answers while Officer Hale was in the room. Officer Mawae stated that he could not recall whether Officer Hale was in the room when the DPA and Officer Mawae discussed clarifying Officer Mawae's answers but that it was "possible" that Officer Hale was present.
[Kaahui's Counseld Q. When [the DPA] took you in the room here, she didn't talk to you about Hey, I'm going to be talking to you about this answer you gave yesterday and clarifying that, and stuff like that?
[Officer Mawae:] A. Oh, clarifying things, yes, sir.
Q. And she did that with another witness in the room; right?
A. I can't recall exactly when Officer Hale was in the room and what we talked about and when he wasn't. He wasn't always in the room when I was with  or [the DPA].
Q. Did you ever get the impression then there was some witness exclusionary rule, based on what he was doing and the timing of when people were in the room?
A. No, sir.
Q. So it very well could have been that you discussed, you know, clarifying stuff when Officer Hale was in the room with you?
A. I don't think I broke any rules or any witness
Q. That's not the question. It could very well have been that Officer Hale was in the room when you were discussing with [the DPA] how you would be clarifying answers today?
A. Yes, sir, it's possible.
Q. So if [the DPA] says before trial that you folks aren't, for better words, her words, in bed together, that's not an accurate statement; right? You folks are in bed together?
A. Huh?
Q. You folks are kind of in bed together?
A. Can you rephrase that question?
Q. No, I can't. Sorry.
A. Okay.
On redirect examination, the DPA asked Officer Mawae a series of questions regarding whether the DPA had discussed the case or Officer Mawae's testimony in Officer Hale's presence:
[The DPA:] Q. Good morning, Officer.
[Officer Mawae:] A. Good morning.
Q. Other than this case, have you and I ever met?
A. No.
Q. Where did you discuss this case with the prosecutor?
A. At the Lahaina station and here at the courthouse.
Q. Who else was present besides you and the prosecutor?
A. At the Lahaina station, just me and you.
Q. Was that the only time we met in person other than in the courthouse?
A. Yes.
Q. And speaking of the courthouse, during breaks yesterday when you went into the witness room, did you discuss what you said on the stand to Officer Hale?
A. No.
Q. And yesterday, after court got out, did you talk to the prosecutor?
A. Yes.
Q. How many minutes or hours or days did you talk to the prosecutor?
A. About two minutes.
Q. And where did this discussion occur?
A. Outside of the courtroom and downstairs by the elevator.
Q. Where was Officer Hale when this discussion occurred?
A. He wasn't in the conversation. He wasn't by us.
Q. And this morning, how long did you have a conversation with the prosecutor?
A. It was a matter of seconds that we spoke to you this morning.
Q. Did we talk to each other over the phone last night?
A. No.
Q. This morning, when you spoke with me for a few seconds or so, where was that?
A. Right outside the courthouse.
Q. Was Officer Hale with us?
A. No.
On cross-examination of Officer Hale, Kaahui's counsel questioned Officer Hale about how he viewed his relationship with the DPA and whether he considered the DPA to be his boss for purposes of gathering evidence for trial:
[Kaahui's counsel:] Q. For purposes of proving this case at this trial, what do you consider your relationship with [the DPA] to be? Would you consider her kind of your boss for purposes of bringing in the evidence for this trial or just a coworker? How do you consider that relationship?
[Officer Hale:] A. I guess I would  if anything, consider her a boss.
Q. So in other words, basically, if she wanted you to go gather up evidence for this case, that's part of your duties, right, assuming it went through the chain of command for ultimately  that's ultimately your duty; right?
A. Yes, sir.
Q. So she has some control over you and other police officers at least for that purpose; right?
A. For that investigation, yes.
Q. And there's no limit to the officers she's allowed to use, is there?
A. That I don't know, no, sir.
On redirect examination, the DPA questioned Officer Hale as follows:
[The DPA:] Q. And counsel asked about your relationship with the prosecutor. Were you  where did you speak with the prosecutor about this case?
[Officer Hale:] A. The Kihei station.
Q. Who else was  was any other officers involved in this case present at that time?
A. No.
Q. And did you discuss your testimony  did you while you were waiting to testify, ask or receive information as to what the other officer[3] here testified to?
A. No.
Q. Do you understand the question?
A. I understood the question. Yes. No. I did not ask him about his testimony, no.
Q. Did he tell you about what he testified to?
A. No.

DISCUSSION
Kaahui argues that the DPA engaged in misconduct by "improperly asserting her personal knowledge" during the above-quoted portions of her redirect examinations of Officers Mawae and Hale. Kaahui's argument is without merit.
Kaahui did not object to the portions of the DPA's redirect examinations of Officers Mawae and Hale that he now challenges on appeal. Accordingly, we review for plain error. The court's power to deal with plain error should be invoked sparingly and with caution because it constitutes a departure from the premise of the adversary system  "that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." State v. Rodrigues, 113 Hawaii 41, 47, 147 P.3d 825, 831 (2006) (internal quotation marks omitted).
We conclude that the DPA did not engage in misconduct in her redirect examinations of Officers Mawae and Hale. Kaahui's counsel opened the door to and created the need for the DPA's redirect examinations through his cross-examinations of the officers. In cross-examining Officer Mawae, Kaahui's counsel insinuated that the DPA, in violation of the witness exclusion rule, had sought to improperly influence the testimony of Officer Hale by exposing him to the trial testimony of Officer Mawae. In cross-examining Officer Hale, Kaahui's counsel suggested that the DPA has supervisory authority over Officer Hale for purposes of trial and could tell Officer Hale what to do. In response to these cross-examinations, the DPA was entitled to elicit testimony showing that she and Officer Mawae had not discussed Officer Mawae's trial testimony in the presence of Officer Hale. The DPA was also entitled to elicit testimony that Officer Mawae had not discussed what he said on the stand with Officer Hale.
Moreover, contrary to Kaahui contention, the DPA's questions did not constitute an assertion of her personal knowledge or inject her own credibility into the case. The DPA's questions did not signal to the jury what she believed, through personal knowledge, the correct answers should be. The DPA did not by her questions put before the jury her version of what had happened. Rather, the jury was permitted to determine the facts based on the witnesses' testimony.
Kaahui's reliance on State v. Rulona, 71 Haw. 127, 785 P.2d 615 (1990), is misplaced. In Rulona, the prosecutrix was permitted, over objection, to cross-examine a defense witness at length about an alleged conversation between the witness and the prosecutrix. Id. at 131, 785 P.2d at 617. The Hawai`i Supreme Court quoted the following as an example of the cross-examination:
Q. Okay. And do you remember indicating to me that it was a difficult situation
A. What's that?
Q. Isn't it true you did indicate to me that it was a difficult situation, that it was hard?
A. I can't remember.
Id.
The court held that the prosecutrix had engaged in misconduct because "[b]y asking questions in this form, the prosecutrix put before the jury her version of what was said in that conversation." Id. at 132, 875 P.2d at 617. The court noted that the form of the questions used by the prosecutrix, in examining the witness about their conversation, "made those questions an assertion of the prosecutrix:[s] personal knowledge of the facts in issue with respect to that conversation." Id., at 132, 785 P.2d 618.[4]
In support of its decision, the Rulona court cited Berger v. United States, 295 U.S. 78 (1935). In Berger, the United States Supreme Court held that the prosecutor had engaged in a series of improper conduct, including "suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered." Id. at 84.
Here, unlike in Rulona, the form of the questions used by the DPA did not constitute an assertion of her personal knowledge of facts in issue, but rather provided a means for the witnesses to explain their version of events. In particular, the DPA, by her questions, did not directly confront the witnesses with her own recollection of the events. Also, unlike in Rulona, there was no version of events suggested by the DPA's questions that conflicted with the testimony of the witnesses. Thus, the jury was not placed in the position of having to weigh the credibility of a witness against that of the DPA. The jury could determine what happened based on proof offered in the form of the witnesses' testimony. Accordingly, the DPA's credibility was not injected into the case. See State v. Jackson, 738 A.2d 354, 355 (N.H. 1999) (holding that the prosecutor did not inject himself into the proceedings by cross-examining a defense witness about their prior interview where 1) the prosecutor did not directly confront the witness with the prosecutor's own recollection, 2) a third-party had been present who could testify about the interview, and 3) the witness admitted that he had made the prior statement).
Rulona is further distinguishable because Kaahui opened the door to the DPA's redirect examinations by cross-examining Officer Mawae about discussions the DPA may have engaged in with Officer Mawae in the presence of Officer Hale. The DPA was entitled to question Officers Mawae and Hale about the circumstances and nature of the discussions she had with them to clarify and explain the subject raised by the defense. Under Kaahui's analysis, a prosecutor would be precluded from questioning an officer about discussions they had regarding the case, even where the defense suggests impropriety surrounding those discussions, because the prosecutor would be injecting his or her credibility into the trial by doing so. We reject this analysis. Fairness dictates that the prosecution be permitted to respond if the defense suggests that the prosecutor and investigating officers engaged in improper discussions.
For these reasons, we conclude that Rulona as well as State v. Sanchez, 82 Hawai`i 517, 529-30, 923 P.2d 934, 946-47 (App. 1996), which involved circumstances very similar to Rulona, is inapposite.

CONCLUSION
The March 9, 2007, Judgment entered by circuit court is affirmed.
NOTES
[1] The Honorable Richard T. Bissen, Jr. presided.
[2] At the time of the charged offense, HRS § 707-716(1)(c) (1993) provided in relevant part:

(1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
. . .
(c) Against a public servant . . . [.]
HRS § 707-715 (1993), which defines terroristic threatening, provides in relevant part:
A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony:
(1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]
[3] Officer Mawae was the only other officer besides Officer Hale to testify at the trial.
[4] Rulona was later overruled on other grounds by State v. Mueller, 102 Hawai`i 391, 393, 76 P.3d 943, 945 (2003).