82,778-01

**COURT OF CRIMINAL APPEALS WRIT NO. WR-82,778-01**
= TARRANT COUNTY TEXAS,WRIT NO. C-396-010272-115 RECEIVED IN
COURT OF CRIMINAL APPEALS

EX PARTE                    §
                            §
                            §   IN THE COURT OF CRIMINAL APPEALS   FEB 09 2015
                            §   OF TEXAS, AUSTIN, TX.
                            §
DESMOND LEDET                §
                                Abel Acosta, Clerk

OBJECTION #2: THE TRIAL COURT'S FINDINGS OF FACT, ON p.6, ¶23 **M I S Q U O T E S  T H E  R E P O R T E R ' S  R E C O R D** TO THIS HONORABLE COURT, EFFECTIVELY ALTERING THE CONSTRUCTION OF THE RECORD IN WHICH THE PROSECUTOR MISQOTED THE LAW BY INFORMING THE JURY THAT THE APPLICANT, IF HE DECIDED TO TESTIFY, WOULD NO LONGER BE COVERED **"O V E R"** WITH THE PRESUMPTION OF INNOCENCE.

TO THE HONORABLE JUDGES OF THE ABOVE SAID COURT:

The Applicant, Desmond Ledet, respectfully and humbly presents this **OBJECTION** to this honorable Court of Criminal Appeals.  In support of this **objection to the trial court's adoption of the State's proposed findings of fact and legal conclusions regarding Applicant's Ground #24, the Applicant presents the following:**

1:  A simple comparison between v.3 RR p.69 line 14 which states:

"presumption, there's no covering **O V E R** him...."

&

page 6, ¶23 of the trial court's findings of fact and conclusions of law(adopted from the State) presented to this Court, **reveals that the word "O V E R" is omitted, shockingly, from the trial court's findings presented to this Court of Criminal Appeals.** The trial court's findings state; contrary to the Reporter's Record:

"presumption, there's no covering him."

2: ATTACHED TO THIS OBJECTION IS A COPY OF v.3 RR p.69. See it at p.11 of this objection.  Look at line 14.please.

3: The Applicant has not yet had time to copy the "State's proposed Memorandum, Findings of Fact And Conclusions of Law" adopted by the trial Court and presented to this Court .. A copy should have been Forwarded to this Court.

4: It is well settled that a defendant is covered **"O V E R"** with the presumption of innocence.  In an attempt to mis-

p.1 of 11                    (a one page exhibit is
                             attached)

construe the Reporter's Record in the minds of this Court, the State has dismantled a significant part of the record, which does alter the meaning----of the record before this Court. Specifically:

(a) the only covering OVER the Applicant(or any defendant ) that was discussed prior to this point in the record was the presumption of innocence. v.33 RR, p.62.(the entire v.3 RR is attached to the writ Application, See Memorandum, Exhibit E. )

(b) The State wants to, contrary to the record, convince this Court that the prosecutor was not talking about the presumption of innocence the Applicant was covered **"OVER"** with.

(c) with the word **"OVER"** after the word "covering" at v.3 RR, p.69 line 14, **viewed in light of the record start- ing back at p.56,** it becomes exceedingly clear that the prosecutor was telling the jury that if the Appli- cant chose to testify, **which he did,** he lost the pre- sumption of innocence. (Shown in detail below.)

(d) By presenting the altered version to this Court in the trial court's adopted findings, and excluding what the prosecutor actually said(starting at p.56)leading up to v.3 RR p.69, the State has misdirected this Court from the record facts that prove the State at trial lessened the State's burden of proof, misquoted the law, and deprived the Applicant of a fair trial. And also proves by the preponderance of the evidence, that defense counsel(who also told Applicant on record he lost the presumption of innocence by taking the stand- Ground #25) was ineffective as a matter of law for not objecting when the prosecutor misquoted the law during voir dire-Ground #24.

(e) By removing the word **"OVER"** after the word covering it changes the record to be misread as if it was saying that if Applicant took the stand and testified there would be no covering for him(example: NO VOUCHING FOR HIM, ETC.). When actually the true record says that if the Applicant "does testify he **waives all those ri- ghts"**[right to be presumed innocent, & right not to testify] only 2 rights the prosecutor just finished explaining]..,."**there's no special protection ANYMORE"**[ certainly the jury did not interpret this to refer to a right to be presumed a truth teller, Applicant can not ever lose a right("no special protection ANYMORE") that he never had. The prosecutor had never prior to alleging the Applicant lost the presumption of inno- cence for taking the stand, informed the jury panel that the Applicant had a right to be presumed a truth

teller, so surely when the prosecutor said "**there's no special protection ANYMORE**" the jury interpreted that to refer to the only special protection the State had just finished explaining the Applicant had(**right to be presumed innocent, right not to testify-starting at p. 56 leading up to p.69**).

(f) after saying there's no special protection ANYMORE(v.3 RR. p.69 line 13·) The prosecutor goes on to say:　　 "**There's no presumption**"[again, the only presumption ever spoken of in the State's voir dire prior to this statement being made on the record, was the "**PRESUMPT-ION OF INNOCENCE**"]-surely this was the only protection ever mentioned that Applicant had that had anything to do with a presumption. The only other right spoken of prior to this, was the right to not testify- **THE RIGHT NOT TO TESTIFY IS NOT A PRESUMPTION-THE RECORD INDISPU-TABLY PROVES, THAT AT THIS POINT(**"There's no presumpt-tion"**) THE ONLY PRESUMPTION/PROTECTION IN THE MINDS OF THE JURY THAT THEY COULD INTERPRET THE PROSECUTOR COULD POSSIBLY BE REFERRING TO-WAS THE PRESUMPTION OF INNO-CENCE THE PROSECUTOR HAD JUST EXPLAINED.**(shown below). (starting at p.56 leading up to p.69 only two rights are explained as rights(plural) the Applicant has-#1: "presumption of innocence, #2 right "not to testify".

(g) **after that the prosecutor goes on to say:  "There's no covering  O V E R him."**

(h) the State's removal of the word **O V E R** in it's alter-ation of the Reporter's Record adopted by the trial court presents this Court with false facts and mis-representations of the record.  This Court can not re-ly on the findings of fact adopted by the trial court, because those findings are not credible.

See **Ex parte Flores,** 387 S.W. 3d 626, 635(**Tex.Crim.App.2012**)( holding that the findings of the habeas trial judge "**are gener-ally accorded great deference, but when the findings are not sup-ported by the record,...the rationale for this deference disap-pears**")("**...we will enter alternative or contrary findings that the record supports**" Id.)  The Applicant respectfully urges this Court of Criminal Appeals to once again take up that same posi-tion in this case. Respectively.

**THESE ARE THE TRUE AND ACCURATE FACTS THAT ARE SUPPORTED BY THE RECORD THAT THIS COURT SHOULD DOUBLE CHECK FIRST, AND THEN, ADOPT IN REGARDS TO GROUND #24, MAKING WHATEVER MODIFICATIONS THIS HONORABLE COURT DEEMS NECESSARY.**

The Reporter's Record proves that prior to the point in the record complained about in Ground #24, the prosecutor explained two specific rights that the Applicant had(**not a right that he never has, such as a right to be presumed a truth teller**). Then after that(as explained in Ground #24) misinformed the jury that if the Applicant chose to take the stand, then he waives all those rights. **ONLY TWO RIGHTS WERE EXPLAINED PRIOR TO THIS.** (1) The right to be presumed innocent unless proven guilty beyond a reasonable doubt; and (2) the right to choose not to testify. Specifically the prosecutor said: "**If the Defendant does testify , he waives all those rights...there's no special protection anymore. There's no presumption, there's no covering OVER him.**" v.3 RR, p.69 lines 10-13. At that point the mistatement of the law was complete. Had State's voir dire ended right there the jury would have heard enough to ensure that it was instilled in their minds that the Applicant was covered **over** in the presumpt- ion of innocence, but if he does testify, "he waives that right, and based on the record,another right(**since the record say's "he waives all**[all being defined as the whole amount, quantity, or extent of, the entire number of] **those rights**"[not right in the singular, but right**s** with an **S** in the plural meaning more than one right is waived if he testifies]. Since there were only two rights discussed prior to this, the prosecutor was referring to

all of those 2 rights.  There is no other practical way to in-
terpret the record before this honorable Court.

In closing,here's some brief detailed facts establishing the a-
bove supported by the record.  We will begin several pages be-
fore the prosecutor began to state that if the Applicant chose
to testify he would lose all of the only two rights discussed:

1: **PLEASE FOLLOW ALONG IN V.3 RR(voir dire); that entire volu-
me labeled Exhibit E in the Memorandum's Appendix.**

2: At v.3 RR p.56 line 19-p.60 line 19  the prosecutor's voir
dire consist of explaining to the prospective jurors the
that they can prove their case with only one witness.

3: At the bottom of page 60 at line 20 the prosecutor quickly
changes the subject of her voir dire to explain that if a
person breaks the law while voluntarily intoxicated, they
are responsible for the conduct.

4: The voir dire on voluntary intoxication continues up until
v.3 RR p.61,line 14.

5: Instantly, after that,at v.3 RR p.61, line 15- p.62, line
4  the prosecutor again changes the subject and states:
**"All right. I want to talk to you a little bit about wit-
nesses that you'll hear...Judge Vick mentioned this, and
these are rights that are based on our constitution. We
all have these rights."**  (Compare with: "If the defendant
does testify he waives all those rights...There's no pre-
sumption; there's no covering over him."—Ground #24)

6: At this point the final answer to what RIGHT**S** the prosecu-
tor informs the jury panel Applicant waives by taking the
stand to testify,can only be found(Based on the record)be-
tween the point shown above where she first begins to make
mention of the rights she eventually states are waived by
taking the stand, and the point in which she states: "he
waives all those rights."

7: The indisputable record adequately shows that between tho-
se two points two rights are mentioned. (1) the right to
be presumed innocent unless proven guilty beyond a reason-
ble doubt, and (2) the right to chooose not to testify.

8: Next, the prosecutor goes on to say at v.3 RR p.62, line
4- line 10: **"...If we were committed--convicted of a crime
, accused of a crime, we each and every one have these
rightS.  If you get a traffic ticket, you still have these
rightS.**

A defendant has a presumption of innocence, and that stays with him until and unless we prove beyond a reasonable doubt that he is guilty."

9: Two very important facts can be gleaned from the above:

   a) The **first right** the prosecutor explained, before eventually stating that "If the defendant does testify he waives all those rights...There's no presumption, there's no covering OVER him", WAS THE RIGHT TO BE PRESUMED INNOCENT UNLESS PROVEN GUILTY BEYOND A REASONABLE DOUBT.

   b) & the prosecutor originally stated the law correctly on the presumption of innocence—BUT LATER ADDED A FALSE AND UNCONSTITUTIONAL STIPULATION ON THAT RIGHT, NAMELY, THAT IF THE APPLICANT CHOSE TO TESTIFY, HE WOULD THEN WAIVE THAT RIGHT.

10: After that the prosecutor goes on to **lessen** the State's burden of proof by next explaining that proof beyond a reasonable doubt could be found by **GUESSING** that elements of the crime have been proven just like people do on the "WHEEL OF FORTUNE". v.3 RR p.63- p.65('WHEEL OF FORTUNE DEFINITION-GUESSING GAMESHOW METHOD OF FINDING ELEMENTS TO OVERCOME THE PRESUMPTION OF INNOCENCE BEGINS AT v.3 RR p.63 line 21,and continues all the way until p.65 line 5).

11: Although not raised in this writ, but relevant to the total context of the record leading up to the statement: "If the defendant does testify he waives all those right**S**", **the prosecutor who had at first stated the law correctly, begin to covertly and subliminally mistate the law and alter the burdens of proof in favor of the State starting with the "wheel of fortune" guessing gameshow method explained to the jury for finding elements of a crime to over come the presumption of innocence,amd reach the level in their minds of proof beyond a reasonable doubt.**

12: The Applicant raised an ineffective assistance of counsel ground on direct appeal for failure to object to the above said "wheel of fortune" guessing gameshow method for overcoming the presumption of innocence explained by the prosecutor. **WHICH CAUSED A HEATED DISPUTE BETWEEN THE JUSTICES OF THE SECOND DISTRICT COURT OF APPEALS.**

13: The honorable Lee Ann Dauphinot concurred only because defense counsel had not yet had a chance to explain his conduct, but firmly argued against the majority opinion concerning the wheel of fortune guessing gameshow method cited above, contending:

   "...I cannot agree with the majority's conclusion that

the prosecutor's Wheel of Fortune anology was a proper hypothetical fact situation to explain the State's burden of proof. As explained to the jury, the burden of proof is merely A BEST GUESS STANDARD. The anology could have been used if the prosecutor had said, When you have enough letters you are no longer guessing. You know. And you know beyond any reasonable doubt. BUT TELLING THE JURY THAT THEIR BEST GUESS IS PROOF BEYOND A REASONABLE DOUBT IS A  M I S T A T E M E N T  O F   T H E   L A W,  AND WE SHOULD SAY SO."

Desmond Ledet v. State,  NO. 02-10-00281-CR, Concurring Op. at p.9,(Tex. App.—Fort Worth, May 2, 2013)(Slip Op.)

Please see a copy of it in the Appendix of the Memorandum attached to the Application. It is Exhibit D, at p.9.

14: **EMPHASIS**-it's only about 4 or 5 pages later in the record that the prosecutor, coming from another angle, again mis-states the law asserting: "If the defendant does testifý he waives all those rights...There's no presumption, there 's no covering O V E R him."

15: Thus the record reveals that the prosecutor made question-able statements affecting the burden of proof leading up to the error complained of in Ground #24, and defense counsel, though present made no objections .

16: Immediately after that, the prosecutor next explains to the panel that: "<u>Another right</u>  that a **defendant has is** the "**Fifth Amendment right not to testify.**" v.3 RR, p.65 lines 24-25.

17: The Fifth Amendment right not to testify is the **second right**(of all of the rights explained) **explained to the panel by the prosecutor,prior to telling them:** "If the defendant does testify he waives <u>all</u> those rights...There's no presumption, there's no covering **over** him."

18: The prosecutor continues to speak to the jury on the Fifth Amendment right not to testify all the way up until the point where she again changes the subject matter and states: "If the Defendant does testify, he waives **all** those right<u>S</u>...there's no presumption, there's no cover-ing **over** him.

19: A very relevant point is that even while making mention of the right not to testify, the prosecutor **reached over the boundaries of the law,** and **explained**(again attacking the presumption of innocence)to the jury panel that some **of the reasons a defendant might utilize his right not to testify included: "Maybe there's some kind of appellate reason. Maybe THEY'RE G U I L T Y and they just don't want to testify."** v.3 RR p.68, lines 10-11.

20: When the prosecutor made that statement she had no know-ledge whether or not the Applicant would testify or not, nevertheless had he chose not to testify his presumption of innocence would have been destroyed in the minds of the jury. Although not raised in this writ, defense counsel did not object to that either.

21: And finally, after making mention of only two rights the Applicant was protected by(#1 presumption of innocence unless proven guilty beyond a reasonablr doubt, & #2, the right not to testify) the prosecutor inflicted the final blow to the right to be presumed innocent by asserting:

**"If the Defendant does testify he waives ALL THOSE RIGHTS , and gets up there and tells you what he wants to tell you, there's no special protection ANYMORE. THERE'S NO PRE-SUMPTION, THERE'S NO COVERING OVER HIM."** (Ground #24)

Defense counsel did not object. Respectfully he should have objeted and sought currative instructions even before it led up to that point,when the prosecutor explained that the proven guilty beyond a reasonable doubt level could be reached by guessing like on the wheel of fortune, and when the prosecutor explained that the reason a defendant might not testify is because they might be GUILTY of have an appellate reason.

Lastly,for the sake of the record facts, after completing the destruction of the Applicant's presumption of innocence in the minds of the jury if he testified, the prosecutor went on to change the subject again and said: "He can be treated like any other witness. He might be presumed to be innocent, but he's not presumed to be a truth teller, You judge him like anyone else." Id lines 14-17. **THE HARM WAS ALREADY DONE, AND THAT DID NOT IN ANY WAY RECOGNIZABLE BY LAW CURE THE ERROR THAT HAD ALREADY TAKEN PLACE. THAT ALSO CAN NOT BE CONSIDERED A RE-CANTATION OF THE MIS-STATEMENT OF LAW THAT WAS ALREADY PLACED IN THE MINDS OF THE JURY**

And being presumed a truth teller is definately, based on the record, **NOT** one of the two rights, explained to the jury that the Applicant had, prior to the prosecutor stating:

"If the Defendant does testify he <u>waives</u> ALL THOSE RIGHTS,... there's no special protection ANYMORE. THERE'S NO PRESUMPTION , THERE'S NO COVERING <u>OVER</u> HIM."

The record makes it more than clear that the prosecutor was speaking of the: #1 right to be presumed innocent, & #2 the right not to testify, no ifs and and buts about it. Respectively. "A prosecutor may neither dispense with the presumption of innocence nor dinigrate the function of the trial." <u>Hall v. United State's</u>, 419 F.2d 582, 587(5th Cir.1969). The prosecutor's misconduct undermined the reliability of the fact finding process, altering the very framework in which the trial was held. The supreme Court has long recognized that a prosecutor has a strong influence over a jury <u>Berger v. U.S.</u>, 295 U.S. 78, 88(1935). The Applicant has already cited the correct law on the subject in the Memorandum based on this honorable Court of Criminal Appeals well-established precedent. See Memorandum, p.46-47.

Ground #24 is an ineffective assistance of counsel Ground. Hon. Fortinberry failed to present any strategy for not objecting in his affidavit. Instead he attempted to deceive this Court and artfully sidestep the actual issue raised.

The error affected the very framework in which the trial was had, and deprived the Applicant of the fundamental right to a fair trial and to due process. The second prong of Strickland, as well as the first is surely met. As shown in Ground #25, defense counsel himself made the same mistatement of law to the

the Applicant. His failure to object was based on ignorance of the Applicable law, not strategy. Even worse he attempted to mislead this Court in his affidavit, falsely claiming he never ever told the Applicant that if he took the stand he would lose the presumption of innocence when all the time the record proves other wise. Applicant's writ should be granted, respectively.

PRAYER

The Applicant humbly prays that this honorable Court will acknowledge this objection to the trial court's adopted **factual findings and legal conclusions concernimg Ground #24;** The Applicant further prays that this Court will reject them, and instead, enter credible fact findings and legal conclusions that the law, the facts, and the record supports. Ultimately please Grant the humble Applicant **immediate** habeas corpus relief.

Respectfully Submitted.

Desmond Ledet   #01651095
Telford Unit
3899 State Hwy.98
New Boston, TX    75570

CERTIFICATE OF SERVICE

A true copy of the above has been mailed to the Tarrant County, Texas Criminal District Attorney's Office, located at 401 W. Belknap, Fort Worth, TX 76196 on Feb. 5th, 2015. **(Put in Prison mailbox).**

Desmond Ledet

Page 68

into account at all?

MS. McCORMICK: Not for any reason.

PROSPECTIVE JUROR: That's tough. I mean, you know, it's tough for a person to say they're not guilty and not want to testify. Why would they not want to testify?

MS. McCORMICK: Can be a variety of reasons. Like Ms. Ernest said, maybe people just aren't good at talking. Maybe they think we haven't done our job. Maybe there's some kind of appellate reason. Maybe they're guilty and they just don't want to testify. There can be a lot of reasons.

But for whatever reason, if a defendant decides not to testify, you just can't talk about it. You might think, you know, if I were in this situation and I didn't do this, I would tell them. But someone else may not feel the same way as you. So the judge is just going to say don't think about it.

PROSPECTIVE JUROR: If I was instructed not to, you know, not to take that into consideration, then I believe I could do that.

MS. McCORMICK: Okay. Mr. Austin, what about you?

PROSPECTIVE JUROR: Sure.

MS. McCORMICK: You could do that?

Page 69

PROSPECTIVE JUROR: Uh-huh.

MS. McCORMICK: Even though that might not be your personal decision if you were in that situation, could you respect someone else's decision not to?

PROSPECTIVE JUROR: Sure.

MS. McCORMICK: Okay. Ms. Frost, what about you?

PROSPECTIVE JUROR: They might think they're doing themselves more harm than good, so yeah.

MS. McCORMICK: You never know. Okay. If the Defendant does testify, he waives all those rights and gets up there and tells you what he wants to tell you, there's no special protection anymore. There's no presumption, there's no covering over him. He can be treated just like any other witness. He might be presumed to be innocent, but he's not presumed to be a truth-teller. You judge him like anyone else.

Mr. Marks, could you do that?

PROSPECTIVE JUROR: I think so.

MS. McCORMICK: Could you subject him to the same scrutiny as you did everyone else?

PROSPECTIVE JUROR: I would think so.

MS. McCORMICK: There's some other information. Each side has the same right to bring witnesses. It's called a subpoena. If you get a

Page 70

subpoena, you have to come to court, and each side has the right to issue them.

Our office has an open-file policy, so they get everything that we have. But it doesn't go the other way, and that's by constitution. That's just the way this works. There's no reciprocal discovery is what it's called in Texas. So they know what we know, but we don't necessarily know what they know. And that's because he's the Defendant and he has that right.

Okay. As we talked about, this case involves sexual behavior. It may involve a sexual act. And that may involve you, the ones that are selected for the jury, talking about that with fellow jurors. Is there anyone who just can't do that? Can't go back there and talk about this stuff with anybody else?

(No response)

MS. McCORMICK: Let's see. Ms. Utley, if you were selected on the jury, do you think you could do that?

PROSPECTIVE JUROR: Oh, absolutely.

MS. McCORMICK: Anyone else?

(No response)

MS. McCORMICK: Ms. Kiani, how do you feel about that?

PROSPECTIVE JUROR: I'm okay with that.

Page 71

MS. McCORMICK: Okay. Probably not what you signed up for when you showed up yesterday. There you go.

Is there anyone who has any kind of religious or moral reasons that you can't sit in judgment on anyone else?

(No response)

MS. McCORMICK: I know that some religions have tenets that they just aren't able to sit on juries. Anyone feel that way?

(No response)

MS. McCORMICK: I know some people, I think, had some scheduling conflicts. The judge mentioned that. I do think we'll finish this week. Probably not more than a couple of days. The judge usually keeps about a 9:00 to 5:00 schedule, and that's subject to what y'all are doing at the time. With that in mind, does anyone have any scheduling conflicts, anything that you can't be here for?

(Hands raised)

MS. McCORMICK: Ms. Kirkland.

PROSPECTIVE JUROR: I already have plans to leave Friday afternoon to go to Houston to go to a wedding.

MS. McCORMICK: Okay. I think you'll be