Filed 7/29/15  P. v. Skinner CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL SKINNER,<br><br>Defendant and Appellant. | B254848<br><br>(Los Angeles County<br>Super. Ct. No. NA096649) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Arthur Jean, Jr., Judge.  Affirmed as modified.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Michael Skinner was convicted of three counts of second degree robbery (Pen. Code, § 211)[1] and the jury found true he personally used a firearm in commission of the robberies. On appeal he contends the prosecutor committed prejudicial misconduct by comparing reasonable doubt to Occam's Razor during final argument and by stating Skinner had intimidated a prosecution witness from his seat at the defense table. He also contends he is entitled to 15 additional days of presentence custody credit. We conclude he is entitled to the 15 days but otherwise affirm.

### Background

On March 31, 2013, defendant, wearing a backpack reversed so as to face forward on his chest, asked Miguel Hernandez for the time, then pulled a gun from the backpack, told Hernandez not to move, and took a ring and necklace from him. On April 10, 2013, defendant, again wearing a backpack in front, asked Alejandro Serrano for the time, then pulled a gun from the backpack, pointed it at Alejandro and his brother, Marcos Serrano, and demanded their phones, which he took.

Five months later, when police informed defendant he was being charged with several armed robberies, he responded, "How can that be. There is no video. My prints were not recovered from the gun." (The police had not mentioned a gun.) Defendant also said, unprompted, to a transporting officer who knew nothing about the case and had said nothing about it, "So wait, I am getting arrested for something I did a long time ago?"

All three victims identified defendant as the robber from six-pack photograph lineups and again at the preliminary hearing, and Hernandez and Alejandro Serrano identified him a third time at trial. Marcos Serrano, however, recanted his identification at trial, testifying defendant was not the person who robbed him.

Defendant's girlfriend testified at trial that he could not have been the robber because he and she "were together every day." When asked why she had not come

---

[1] Undesignated statutory references will be to the Penal Code.

forward with this information until the day of trial, seven months after defendant was arrested, she testified it was because she did not think the police would believe her.

During the People's initial closing argument, the prosecutor addressed why Marcos Serrano had recanted his identification: "So we are left to wonder why did this happen. And there is an obvious explanation. One of the benefits of being a juror and being in the courtroom with the witness is you get to look. And the instructions say this is something that you get to take into account. You take into account his demeanor, expression on his face. What you have obviously is a frightened kid. [¶] Some of you had the chance of being able to *see what the defendant was doing during his testimony on the stand and to see the faces that he was making and the gestures and the mouthed words*. But those of you who weren't able to observe that could clearly see the discomfort that Marcos exhibited on the stand. He was frightened." (Italics added.)

During the defense's closing argument, defendant's attorney posed a hypothetical conversation between police and the eyewitnesses, arguing to the jury, "Forget the six-pack. We have a live lineup. You can look at his color, skin tone, lips, nose. Let's be a hundred percent sure. Mr. Hernandez, is this the young guy that robbed you? Let me put that hoodie on again. Is this the guy that you saw? [¶] Alejandro, Marcos, you two guys, come in. We have somebody that could be in there. We don't know. We have a live guy there. Put him against the wall with some other guys. Corroborate what they saw. That would be very powerful."

In rebuttal, the prosecutor said, "[W]e use the reasonable doubt standard. The scientist [*sic*] have this fancy expression they call Occam's Razor. It says that *the obvious answer is the best answer. And that applies here as well.* [¶] The obvious answer why you have got three people identifying the defendant three different times is that he is the guy they saw. And then you look at the obvious explanation for why the defendant gives the answer of a guilty man, it is because he knows he did it. [¶] Based on that, I ask you to find him guilty of all three counts of robbery and of the special allegation. . . ." [¶] I am asking you to find him guilty on each of the three counts and on

the firearms allegation based on this evidence that it is proved beyond a reasonable doubt." (Italics added.)

The trial court instructed the jury that it "must decide all questions of fact in [the] case from the evidence received in the trial and not from any other source," and that "[s]tatements made by the attorneys during the trial are not evidence." On the standard of proof, the court instructed: "Reasonable doubt is defined as follows: It is not a mere possible doubt because everything relating to human affairs is open to some possible or imaginary doubt. [¶] It is that state of the case which after the entire comparison and consideration of all of the evidence leaves the minds of the jurors in that condition that they *cannot say they feel an abiding conviction of the truth of the charge*." (Italics added.)

The jury found defendant guilty as charged, and he was sentenced to 15 years in prison, with 208 days of custody credit. He timely appealed.

## DISCUSSION

### A. Prosecutorial Misconduct

Defendant contends the prosecutor's comment regarding defendant's gesturing during trial adduced evidence outside the record, and the comment about Occam's Razor altered the standard of proof. We agree it was improper for the prosecutor to refer to defendant's expressions and gestures during witness testimony, but the error was harmless. It was not improper to refer to Occam's Razor.

Respondent preliminarily argues defendant forfeited his misconduct claim by failing to object to the prosecutor's comments or seek a jury admonishment. We agree.

Absent a showing that an objection or request for admonition would have been futile or the harm could not have been cured, a defendant may not complain of prosecutorial misconduct unless the defendant objected to the alleged misconduct in a timely fashion at trial and requested that the jury be admonished to disregard the impropriety. (*People v. McDermott* (2002) 28 Cal.4th 946, 1001.)

On this record, nothing suggests either that a proper objection would have been overruled or an immediate jury admonition ineffective. Defendant was required to assert

4

a timely and specific objection, and his failure to do so forfeits his claim of prosecutorial misconduct on appeal. (*People v. Turner* (2004) 34 Cal.4th 406, 421.) Defendant's arguments fail on the merits as well.

A prosecutor's misconduct violates due process if it infects a trial with unfairness. (*People v. Harrison* (2005) 35 Cal.4th 208, 242.) Less egregious conduct may nonetheless constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to attempt to persuade the court or jury. (*Ibid.*) If a prosecutorial misconduct claim is based on the prosecutor's arguments to the jury, we consider how the statement would, or could, have been understood by a reasonable juror in the context of the entire argument and determine whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. (*People v. Dennis* (1998) 17 Cal.4th 468, 522.) A prosecutor may fairly comment on and argue any reasonable inferences from the evidence. (*People v. Samayoa* (1997) 15 Cal.4th 795, 837.) But a prosecutor may not suggest the existence of facts outside of the record by arguing matters not in evidence (*People v. Benson* (1990) 52 Cal.3d 754, 794-795); mischaracterize the evidence (*People v. Hill* (1998) 17 Cal.4th 800, 823); or appeal to the jury's sympathy, passion, or prejudice (*People v. Fields* (1983) 35 Cal.3d 329, 362). Although a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." (*Berger v. United States* (1935) 295 U.S. 78, 88 [55 S.Ct. 629].)

Here, the prosecutor told the jury it "had the chance of being able to see what the defendant was doing during his testimony on the stand and to see the faces that he was making and the gestures and the mouthed words." Defendant argues this statement adduced evidence not in the record and invited the jury to convict him based on his in-court demeanor, not the record evidence.

We agree the statement was improper, as it suggested the existence of facts outside the evidence. But it did not infect the trial with unfairness. Defendant was identified three times by each of two victims and two out of three times by the third, and he made two incriminating statements to police when arrested, evincing knowledge of a gun when no gun had been mentioned and knowledge that the robberies had taken place "a long

5

time ago," when that had not been mentioned. There is no reasonable likelihood the jury construed or applied the prosecutor's isolated and fleeting—one sentence—comment in an objectionable fashion, especially given the trial court's instructions that the jury was to consider only the evidence and that attorney statements are not evidence.

The prosecutor's reference to Occam's Razor was not misconduct at all. He stated the principle meant that "the obvious answer is the best answer," which is not entirely accurate as to Occam's Razor but reasonably characterizes the reasonable doubt standard, which requires jurors to form "an abiding conviction of the truth of the charge." An obvious answer is akin to an abiding conviction. To the extent the statement strayed from the reasonable doubt standard, the deficiency was cured by the trial court's proper instruction.

### B. Presentence Custody Credits

Defendant contends he is entitled to 15 additional days of presentence custody credit. The Attorney General concedes the point, and we agree.

Defendant was arrested on August 22, 2013, and sentenced on March 3, 2014. Including the day of arrest and the day of sentencing (*People v. Smith* (1989) 211 Cal.App.3d 523, 526), defendant was entitled to 194 days of actual custody credit, 12 more days than the trial court's award of 182 days, plus 29 days of good time/work time credit (15 percent of 194), for a total of 223 days. The abstract of the judgment must be amended accordingly.

## DISPOSITION

The judgment is modified to reflect a total of 223 days of presentence custody credit.  In all other respects the judgment is affirmed.  The superior court is directed to prepare an amended abstract of judgment to reflect the judgment as modified and forward a copy of it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


                                                              CHANEY, J.


We concur:


    ROTHSCHILD, P. J.


    MOOR, J.[*]


---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.